# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN KOSINSKI,

        Plaintiff-Appellant,

v

CROSSWINDS CONDOMINIUM
ASSOCIATION,

        Defendant,

and

W & D LANDSCAPING & SNOW PLOWING,
INC.,

        Defendant/Cross-Defendant-
        Appellee,

and

CROSSWINDS EAST CONDOMINIUM
ASSOCIATION and ASSOCIATION
MANAGEMENT, INC.,

        Defendants/Cross-Plaintiffs-
        Appellees.

UNPUBLISHED
January 21, 2016

No. 323494
Macomb Circuit Court
LC No. 2013-004650-NO

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order of dismissal of Count 1 of defendants/cross-plaintiffs-appellees Crosswinds East Condominium Association ("Crosswinds") and Association Management, Inc.'s ("Association") cross-claim against defendant/cross-defendant-appellee W & D Landscaping & Snow Plowing, Inc. ("W & D"). The

-1-

issues on appeal relate to the trial court's opinion and order granting Crosswinds and Association's motion for summary disposition of plaintiff's claims.[1] We affirm.

On January 19, 2011, at approximately 6:40 a.m., plaintiff exited the front door of his condominium in Clinton Township to walk to his car so he could travel to work for the day. According to plaintiff, it was still dark outside and there were no functioning lights illuminating the area where he walked. Plaintiff saw blowing snow and ice crystals being picked up by the wind. As plaintiff was walking on the sidewalk toward his car, he stepped on a large patch of ice and immediately slipped and fell on it, breaking multiple bones in his left leg and ankle. He did not see the patch of ice before the fall. However, plaintiff was able to see and touch the ice after he fell on it, and he believed that the patch of ice was approximately 20 to 25 feet long. Plaintiff immediately called his girlfriend, Amy Haugh, who was still inside of the condominium, to let her knew that he had fallen. Haugh came to plaintiff's aid. Haugh saw the patch of ice and noticed that there was a light coating of snow over it. After plaintiff was taken to the hospital, Haugh and her son walked on the grass next to the sidewalk on which plaintiff fell in order to avoid the ice. In the days leading up to plaintiff's fall, it had not snowed and there was no ice on the sidewalk on which plaintiff fell. However, Haugh testified in her deposition that it was raining at approximately 10:00 p.m. or 10:30 p.m. on the night before plaintiff's fall.

Plaintiff first argues that the trial court incorrectly ruled that there was no genuine issue of material fact regarding whether the black ice on which he slipped was an open and obvious dangerous condition. Plaintiff argues that the black ice was not open and obvious, and that even if it was, the ice was effectively unavoidable. We disagree.

"This Court reviews de novo a decision to grant or deny a motion for summary disposition. Summary disposition under MCR 2.116(C)(10) is appropriately granted where no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law." *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 489-490; 835 NW2d 363 (2013) (citations omitted). " 'In considering a motion pursuant to MCR 2.116(C)(10), a court considers affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in a light most favorable to the nonmoving party.' " *Jahnke v Allen*, 308 Mich App 472, 474; 865 NW2d 49 (2014) (citation omitted). Moreover, the Court considers only "what was properly presented to the trial court before its decision on the motion." *Pena v Ingham Co Rd Comm*, 255 Mich App 299, 310; 660 NW2d 351 (2003). "The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion." *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

---

[1] Count 2 of the cross-claim was dismissed when the trial court granted summary disposition of plaintiff's claims. In addition, defendant Crosswinds Condominium Association was voluntarily dismissed from the case before the motion for summary disposition was filed. While Crosswinds and Association originally filed the motion for summary disposition of plaintiff's claims, the parties obtained concurrence in their motion from W & D.

In a premises liability action, the plaintiff is required to prove the following elements: "(1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered damages." *Benton v Dart Props, Inc*, 270 Mich App 437, 440; 715 NW2d 335 (2006). The duty owed by the landowner depends on the plaintiff's status. *Id*. Here, the parties have stipulated that plaintiff was an invitee. Therefore, plaintiff was owed a duty to "exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Id*. (citation and quotation marks omitted). A landowner is liable for a breach of his duty if he "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Hoffner v Lanctoe*, 492 Mich 450, 460; 821 NW2d 88 (2012).

"A premises possessor is generally not required to protect an invitee from open and obvious dangers." *Slaughter v Blarney Castle Oil Co*, 281 Mich App 474, 478; 760 NW2d 287 (2008). In determining whether a danger is open and obvious, the standard is whether "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." *Id*. (citation and quotation marks omitted; alteration in original). In applying the open and obvious doctrine in regard to the accumulation of ice and snow "our courts have progressively imputed knowledge regarding the existence of a condition as should reasonably be gleaned from all of the senses as well as one's common knowledge of weather hazards that occur in Michigan during the winter months." *Id*. at 479. Our Supreme Court has explained:

> With specific regard to ice and snow cases, this Court has "reject[ed] the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability" under any circumstances. Rather, a premises owner has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation, requiring that "reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee." However, it is also well established that wintry conditions, like any other condition on the premises, may be deemed open and obvious. Michigan courts thus ask whether the individual circumstances, including the surrounding conditions, render a snow or ice condition open and obvious such that a reasonably prudent person would foresee the danger. [*Hoffner*, 492 Mich at 463-464 (citations omitted; alteration in original).]

Specifically in the context of black ice, this Court has held that it is "either invisible or nearly invisible, transparent, or nearly transparent," and that "[s]uch definition is inherently inconsistent with the open and obvious danger doctrine." *Slaughter*, 281 Mich App at 483. As a result, this Court held that it would not extend the open and obvious doctrine to cases involving black ice unless the black ice in question "would have been visible on casual inspection before the fall" or there existed "other indicia of a potentially hazardous condition." *Id*.

Viewing the evidence in the light most favorable to plaintiff, there is no genuine issue of material fact regarding whether the black ice on which plaintiff slipped was open and obvious. First, although plaintiff contended that he slipped on black ice, there were other indicia of a potentially hazardous condition rendering the dangerous condition open and obvious. See

-3-

*Slaughter,* 281 Mich App at 483. In his deposition, plaintiff testified that, before his fall, it was cold outside, and he observed wind blowing snow and ice crystals. Significantly, Haugh testified that it had been raining into the evening hours the night before plaintiff's fall. The presence of rain just hours before the fall, the freezing temperatures, and the blowing snow demonstrates that there were other indicia of a potentially hazardous condition. See *id*.

In addition, in spite of plaintiff's arguments regarding the poor lighting of the area, there was evidence that the black ice would have been visible on casual inspection before the fall. See *Royce v Chatwell Club Apartments*, 276 Mich App 389, 390, 396; 740 NW2d 547 (2007) (holding that the patch of black ice upon which the plaintiff fell was an open and obvious dangerous condition in spite of the fact that the fall happened when it was dark outside). Haugh testified that after plaintiff's fall, she was able to clearly observe the patch of ice on which plaintiff fell. Plaintiff also testified that he was able to see the patch of ice after his fall. Furthermore, Haugh testified that she was able to see the ice because snow had been blown onto it. See *Ververis v Hartfield Lanes (On Remand)*, 271 Mich App 61, 67; 718 NW2d 382 (2006) ("On the basis of these precedents, we hold as a matter of law that, by its very nature, a snow-covered surface presents an open and obvious danger because of the high probability that it may be slippery."). Thus, the patch of ice was an open and obvious dangerous condition. See *id*.

Recent orders of the Michigan Supreme Court support the trial court's ruling. In *Cole v Henry Ford Health Sys*, 497 Mich 881 (2014), the Court found that the black ice on which the plaintiff slipped was open and obvious since four other witnesses saw the black ice and there were other patches of ice in the area.[2] Additionally, there were other indicia of a hazardous condition since there was 7 inches of snow on the ground, precipitation had fallen the previous day, and there was a recent thaw followed by consistent below-freezing temperatures. See *id*. Black ice was also found to be open and obvious in *Janson v Sajewski Funeral Home, Inc*, 486 Mich 934, 935 (2010), where there was snow present around the defendant's premises, mist and light freezing rain had fallen earlier in the day, and the temperature was below freezing.[3] Like in *Cole* and *Janson*, the existence of snow on the ground, combined with rain and freezing temperatures, demonstrates that the black ice on which plaintiff slipped was open and obvious because "these wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection." See *id*.

Plaintiff contends that the icy sidewalk was effectively unavoidable. While the general rule is that landowners do not have a duty to protect invitees from open and obvious dangers on the land, the Michigan Supreme Court has recognized an exception to this rule. If "special

---

[2] The Michigan Supreme Court order in *Cole* is binding precedent since it constituted a final disposition on an application for leave to appeal and contained a concise statement of the facts and reasons for the decision. See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369; 817 NW2d 504 (2012).

[3] The Michigan Supreme Court order in *Janson* is binding precedent since it constituted a final disposition on an application for leave to appeal and contained a concise statement of the facts and reasons for the decision. See *DeFrain*, 491 Mich at 369.

aspects" of the hazard make even an open and obvious risk unreasonably dangerous, the landowner has a duty to take reasonable measures to protect invitees. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001). The Court recognized two scenarios whereby a landowner has a duty to protect invitees from an open and obvious danger: (1) where the danger is "effectively unavoidable" or (2) the danger, while avoidable, imposes an unreasonably high risk of severe harm. *Id*. at 518-519. As an example of an effectively unavoidable open and obvious danger, the Court described a scenario in which a commercial building with only one exit for the public is covered in standing water. *Id*. Although the condition is open and obvious, any customer wishing to leave the store would have to go through the water in order to exit. *Id*. The case does not involve such an unavoidable hazard. While the sidewalk on which plaintiff walked was maybe the most convenient route to his car, there is no evidence to suggest that it was the only route and that he was forced to walk over ice to reach the car. More significantly, Haugh testified that she was able to walk to and from the area of the fall by walking on the grass next to the sidewalk.

In *Joyce v Rubin*, 249 Mich App 231, 242-243; 642 NW2d 360 (2002), this Court held that a snow-covered path with an alternate route did not constitute a "special aspect" of an open and obvious condition. In *Joyce*, the plaintiff was walking to the front door of her former employer's home to retrieve some belongings when she slipped and fell. *Id*. at 233. In rejecting her claim that the snow-covered path was effectively unavoidable, the Court noted that the plaintiff's own testimony established that she was able to walk around the regular pathway earlier in the day to avoid the slippery sidewalk. *Id*. at 242. Like in *Joyce*, Haugh testified that both she and her son were able to walk around the slippery path. See *id*. Unlike the example set forth in *Lugo*, they were not forced to walk on the ice in order to enter and exit the condo. Because the ice on which plaintiff slipped was an open and obvious danger with no special aspects, defendants had no duty to protect plaintiff against it. Thus, we need not address plaintiff's additional claim regarding notice.

Plaintiff next argues that W & D is liable under a separate theory of general negligence. Crosswinds contracted with W & D to provide snow removal and de-icing services. Plaintiff argues that W & D was negligent in failing to salt the sidewalk on which plaintiff slipped and in piling snow in such a way that it melted onto the sidewalk and formed a sheet of ice on which plaintiff slipped and fell. We disagree.

Plaintiff first raised the issue regarding whether W & D properly salted and removed the snow in his motion for reconsideration. This Court has held that "[w]here an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Thus, the issue is unpreserved. See *id*. However, "[t]his Court may review an unpreserved issue if it is an issue of law for which all the relevant facts are available." *Id*. Because the facts necessary to decide this claim are largely the same as those discussed above, this Court may review this issue. See *id*. Unpreserved issues are reviewed for plain error. *Demski v Petlick*, 309 Mich App 404, ___; ___ NW2d ___ (2015); slip op at 10.

We first note that plaintiff's claim against W & D in his complaint was premised on a dangerous condition on the land, rather than on an independent theory of liability. "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a

condition of the land." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). This Court has held that "[i]n the latter case, liability arises solely from the defendant's duty as an owner, possessor, or occupier of land." *Id*. "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Id*. However, a plaintiff may also bring "a separate claim grounded on an independent theory of liability based on the defendant's conduct." *Laier v Kitchen*, 266 Mich App 482, 493; 702 NW2d 199 (2005). "Courts are not bound by the labels that parties attach to their claims," and " '[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim.' " *Buhalis*, 296 Mich App at 691-692 (citation omitted; alteration in original).

In this case, plaintiff's claim against W & D arose from a dangerous condition on the land. Although plaintiff argued in his motion for reconsideration that his claim against W & D was for failure to salt the sidewalks and for piling the snow in a manner that created the sheet of ice, plaintiff did not make these allegations in his complaint. Instead, plaintiff alleged that all of the defendants breached several duties related to the land, including "[t]he duty to provide a safe place for a tenant/invitee, such as Plaintiff, in which to walk and move about," "[t]he duty to take precautions and warn tenants/invitees such as Plaintiff, of all dangers on the premises or dangers which should have been known to exist upon the premises upon a reasonable inspection," "[t]he duty to remove, eliminate or repair any obstacle, impediment or other defect found to exist, or which should have been found in and about the premises owned and operated by the Defendants," "[t]he duty to provide regular inspections and maintenance programs of said premise and to provide people in said area to clean, inspect, supervise or move dangerous and defective conditions which include the defect which caused Plaintiff's fall," and the duty "to exercise reasonable care for Plaintiff's safety in the circumstances." Plaintiff also alleged that defendants failed to inspect the premises and remove the dangerous conditions, warn the public and the tenants of the dangerous condition, adequately supervise employees, and exercise reasonable care in hiring those who maintain the premises. Plaintiff's allegations were related to the dangerous condition on the land, rather than to any independent action on the part of a defendant causing plaintiff's injuries. Plaintiff also did not differentiate between the duties owed by the defendants. Accordingly, the gravamen of plaintiff's claim against W & D sounded in premises liability, rather than ordinary negligence. There is no indication that W & D was an owner, possessor, or occupier of the land, and, as explained above, the dangerous condition was open and obvious. Therefore, the trial court properly granted summary disposition in favor of W & D. See *Buhalis*, 296 Mich App at 692.

Furthermore, even if plaintiff had alleged an ordinary negligence claim in his complaint with regard to the failure to salt the sidewalk and properly remove the snow, plaintiff's claim is without merit. In order to establish a prima facie case of general negligence, a plaintiff must establish the following elements: "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). As stated by the Court in *Loweke*, a party to a contract is not "relieved of its preexisting common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of its

undertakings." *Id*. at 172. However, the Court must determine "whether, aside from the contract, the defendant owed any independent legal duty to the plaintiff." *Id*.

W & D first argues that it did not owe a duty to plaintiff to salt the sidewalk. While acknowledging *Loweke's* holding that a contractual relationship does not relieve a party from its common law duty to exercise reasonable care, W & D argues that plaintiff is relying solely on W & D and Crosswinds's contract to establish a duty. It argues that its obligation to salt the sidewalk arose solely from its contract with Crosswinds and that it owed no duty separate from the contract to salt the sidewalk for plaintiff. Although plaintiff argues that W & D had a duty to salt the sidewalk "with some degree of skill and care," W & D had no duty to plaintiff to actually begin performance. Plaintiff has not presented evidence that he was a third-party beneficiary to the contract. See *Loweke*, 489 Mich at 166. While *Loweke* held that parties to a contract are still under the common-law duty of care, it also stated that the plaintiff still must prove that the defendant breached a duty that was "separate and distinct" from defendant's contract. *Id*. at 168. Because plaintiff has failed to prove that W & D's failure to salt the walkway was anything more than a breach of its contractual duty to Crosswinds, he cannot show that W & D breached a duty owed to him. See *id*.

Plaintiff contends that W & D also breached its common law duty of care when it negligently piled snow "in such a way that it would melt onto the sidewalk creating a sheet of ice upon which Plaintiff fell." Although W & D did not owe an affirmative duty to plaintiff to salt the sidewalks and remove snow, once it began that job it did owe a duty to perform it in a nonnegligent manner. See *Fultz v Union-Commerce Assoc*, 470 Mich 460, 465; 683 NW2d 587 (2004). While W & D did owe a duty to properly remove the snow from the sidewalk, plaintiff is merely speculating that W & D conducted this removal in a negligent manner. *Karbel v Comerica Bank*, 247 Mich App 90, 97-98; 635 NW2d 69 (2001) ("A conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference.") (citation and quotation marks omitted). Plaintiff has not demonstrated exactly how the snow was removed by W & D and what manner of removal would have satisfied W & D's duty of reasonable care. Plaintiff's testimony that the wind on the morning of his fall was blowing snow is a more likely explanation for any snow that may have been covering the sidewalk that morning. In addition, Haugh's testimony that it was raining the night before the fall is the most likely explanation why the sidewalk was covered in ice. As noted by the trial court, plaintiff argued that the ice was black ice, "which by its very nature is a thin coating or glazing of ice rather than that which would form from puddled water." Accordingly, the trial court properly granted summary disposition in favor of W & D. See *id*.

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood