**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

JUNE 6, 2011

STATE OF MICHIGAN

SUPREME COURT

RICHARD LOWEKE and SHERRI
LOWEKE,

      Plaintiffs-Appellants,

v                                                   No. 141168

ANN ARBOR CEILING & PARTITION
CO., L.L.C.,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH (except ZAHRA, J.)

CAVANAGH, J.

    Plaintiff, an employee of an electrical subcontractor, was injured at a construction site when several cement boards fell on him. The boards had been leaned against a wall by employees of defendant, a carpentry and drywall subcontractor, which, like plaintiff's employer, had been hired by a general contractor to work on the construction project. Plaintiff sued defendant for negligence and defendant moved for summary disposition, asserting that, under *Fultz v Union-Commerce Assoc*, 470 Mich 460, 469-470; 683 NW2d 587 (2004), and its progeny, it owed no duty to plaintiff that was "separate and distinct"

from defendant's contractual duties to the general contractor. The trial court granted defendant's motion and the Court of Appeals affirmed. We granted plaintiff's application for leave to appeal. *Loweke v Ann Arbor Ceiling & Partition Co, Inc*, 488 Mich 876 (2010).

We take this opportunity to clarify *Fultz*'s "'separate and distinct' mode of analysis," 470 Mich at 467, and hold that a contracting party's assumption of contractual obligations does not extinguish or limit separately existing common-law or statutory tort duties owed to noncontracting third parties in the performance of the contract. *Davis v Venture One Constr, Inc*, 568 F3d 570, 575, 577 (CA 6, 2009).[1] In this case, plaintiff asserts that defendant had a common-law duty, separate and distinct from its contractual obligations to the general contractor, to use ordinary care in order to avoid physical harm to persons and property in the execution of its undertakings. See, e.g., *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967); *Rinaldo's Constr v Mich Bell Tel Co*, 454 Mich 65, 84; 559 NW2d 647 (1997). Because defendant raised its motion for summary disposition on the basis of an improper understanding of *Fultz*, and the Court of Appeals affirmed the trial court's decision granting summary disposition on that basis, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

---

[1] Although the United States Court of Appeals for the Sixth Circuit has subsequently opined that Michigan courts would have decided *Davis* differently, see *Bennett v MIS Corp*, 607 F3d 1076, 1096 (CA 6, 2010), the Sixth Circuit's interpretation of Michigan law is not binding on this Court. *Rasheed v Chrysler Corp*, 445 Mich 109, 123 n 20; 517 NW2d 19 (1994). And, for the reasons stated later in this opinion, we reject *Bennett*'s overly broad reading of *Fultz*.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff, Richard Loweke,[2] was an electrician employed by Shaw Electric, a subcontractor on a construction project at Detroit Metro Airport. Walbridge Aldinger Company, the general contractor for the project, also subcontracted with defendant to provide carpentry and drywall services. Defendant's employees leaned numerous 4- by 8-foot sheets of cement board against a wall in a hallway where plaintiff was working. Plaintiff claimed that at the time of the accident, he was standing midway in front of the cement boards when, for unknown reasons, sheets of the cement board began to fall. Plaintiff attempted to stop the boards from falling on him, but to no avail: several sheets of cement board fell onto plaintiff's right leg, injuring him.

Plaintiff sued defendant, alleging that defendant was negligent in stacking the cement boards in an unstable position, creating a new hazard that previously did not exist. Relying primarily on *Fultz*, defendant moved for summary disposition, asserting that it was not liable to plaintiff in tort because plaintiff's allegations were based on an assertion that defendant negligently performed its contractual obligations to the general contractor and, thus, were not based on any separate and distinct duty that defendant owed to plaintiff. To support its argument, defendant cited its contract with Walbridge, which held defendant responsible for "unloading, moving, lifting, protection, securing and dispensing of its materials and equipment at the Project Site." Defendant asserted that it had not violated any duty that was independent of the contract because, in its view, the

---

[2] Because plaintiff Sherri Loweke's claims are derivative of the injuries suffered by her husband Richard, we will refer to Richard Loweke as the singular "plaintiff."

3

management and storage of its materials was a subject of its contract with Walbridge. The trial court agreed with defendant and granted its motion for summary disposition, reasoning that what had happened was within defendant's obligations under the contract. Plaintiff appealed.

The Court of Appeals affirmed. The Court explained that, under *Fultz*, a "court must look at the terms of the contract and determine whether the defendant's action was required under the contract." *Loweke v Ann Arbor Ceiling & Partition Co, Inc*, unpublished opinion per curiam of the Court of Appeals, issued April 22, 2010 (Docket No. 289451), p 3. Because defendant was required under its contract with Walbridge to secure the cement board at the project site, the Court reasoned that plaintiff's claim was based on defendant's negligence in performing its obligations under the contract and that the alleged hazard had not presented any unique risk that was not contemplated by the contract. Finally, the Court claimed that its holding was supported by two peremptory orders of this Court: *Mierzejewski v Torre & Bruglio, Inc*, 477 Mich 1087 (2007), and *Banaszak v Northwest Airlines, Inc*, 477 Mich 895 (2006). We granted plaintiff's application for leave to appeal. *Loweke*, 488 Mich 876.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *In re Egbert R Smith Trust*, 480 Mich 19, 23; 745 NW2d 754 (2008). This Court also reviews de novo questions of law. *Byker v Mannes*, 465 Mich 637, 643; 641 NW2d 210 (2002). Whether a defendant is under a legal obligation to act for a plaintiff's benefit—i.e., whether a defendant owes a particular plaintiff a duty—is a question of law.

4

*Dyer v Trachtman*, 470 Mich 45, 49; 679 NW2d 311 (2004); *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86; 679 NW2d 689 (2004).

### III. ANALYSIS

To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages. *Roulo v Auto Club of Mich*, 386 Mich 324, 328; 192 NW2d 237 (1971). Accordingly, a defendant is not liable to a plaintiff unless the defendant owed a legal duty to the plaintiff. *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 262; 571 NW2d 716 (1997). In this case, the issue is when a duty of care arises between a party to a contract and a noncontracting third party. In other words, when two parties enter into a contract and a noncontracting third party, i.e., one who is a stranger to the contract, is injured, under what circumstances does a duty of care arise between the contracting party and the third party?

In *Fultz*,[3] this Court attempted to clarify the standards for determining when a negligence action based on a defendant's contractual obligations with another and brought by a third party to that contract may lie. Since *Fultz* and its progeny were issued, however, courts have erroneously interpreted this Court's decisions as rejecting accepted tort-law principles and creating a legal rule "unique to Michigan tort law," which bars

---

[3] Although the two concurring justices in *Fultz* remain committed to their positions in that case, see 470 Mich at 470-476 (MARILYN KELLY, J., concurring), we recognize that the principles announced by the *Fultz* majority are the law in Michigan and will apply them here.

negligence causes of action on the basis of a lack of duty if a third-party plaintiff alleges a hazard that was the subject of the defendant's contractual obligations with another. *Bennett v MIS Corp*, 607 F3d 1076, 1091-1092, 1094-1095 (CA 6, 2010); see, also, *Hatcher v Senior Home Health Care Inc*, unpublished opinion per curiam of the Court of Appeals, issued August 19, 2010 (Docket No. 289208), p 5 (stating that a claim is barred if an injury is "caused by a hazard that is even remotely connected to a contractual relationship"). Because this broad interpretation is misguided, we write to clarify *Fultz*.

## A. LEGAL BACKGROUND

Before *Fultz*, when a plaintiff pleaded a tort arising out of a defendant's breach of contractual obligations, Michigan courts historically drew a distinction between "misfeasance" of a contractual obligation—i.e., "active misconduct"—and "nonfeasance" of a contractual obligation—i.e., "passive inaction," *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 498; 418 NW2d 381 (1988), or "failing to do what one has promised to do in the absence of a duty to act apart from the promise made," *Ferrett v Gen Motors Corp*, 438 Mich 235, 245 n 11; 475 NW2d 243 (1991) (quotation marks and citation omitted). Under this dichotomy, a contracting party generally was not liable in tort for the complete nonperformance of a contractual obligation, or nonfeasance, whereas defective performance of a contractual obligation, or misfeasance, could support an action in tort or contract. *Rinaldo's Constr*, 454 Mich at 83-84; *Ferrett*, 438 Mich at 245 n 11; *Chase v Clinton Co*, 241 Mich 478, 486; 217 NW 565 (1928). As this Court has stated, however, the fundamental principle distinguishing a cause of action in tort from one in contract is the concept of duty. *Rinaldo's Constr*, 454 Mich at 83. Accordingly, in cases of nonfeasance, a defendant who fails to perform his contractual

6

duties is ordinarily not liable in tort because, as a general tort rule, "there is no duty that obligates one person to aid or protect another." *Williams*, 429 Mich at 498-499.[4] As a result, when a defendant completely fails to perform his contractual obligations, "[w]hat we are left with is defendant's failure to complete his contracted-for performance," which "is not a duty imposed by the law upon all, the violation of which gives rise to a tort action" but, instead, is "a duty arising out of the intentions of the [contracting] parties themselves and owed only to those specific individuals to whom the promise runs." *Hart v Ludwig*, 347 Mich 559, 565-566; 79 NW2d 895 (1956).

In contrast, cases that recognized a cause of action in tort arising out of the negligent performance of a contract by a defendant "generally involve[d] a separate and distinct duty imposed by law for the benefit of the plaintiff that provide[d] a right to maintain [the] action without regard to whether there was a contractual relationship between the plaintiff and the defendant." *Ferrett*, 438 Mich at 245. This separate and distinct duty "imposed by law" could arise by operation of a statute or under the "basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark*, 379 Mich at 261; see, also, *Rinaldo's Constr*, 454 Mich at 84; *Parker v Port Huron Hosp*, 361 Mich 1, 11; 105 NW2d 1 (1960) ("It should be noted that . . . at the common law . . . the general rule has been that one is liable for his negligence or tortious acts."). Thus, in cases alleging

---

[4] See, also, 1 Torts: Michigan Law & Practice (2d ed), § 10.18, p 10-23. But see *Williams*, 429 Mich at 499 (noting the existence of an exception to this general rule when there is a special relationship between the parties).

misfeasance of contractual obligations, although there was a contract, it "merely create[d] the state of things which furnishe[d] the occasion of the tort." *Clark*, 379 Mich at 261.

This Court, however, has recognized that determining whether an action in tort can arise out of a contractual promise is often largely semantic and difficult to discern. *Rinaldo's Constr*, 454 Mich at 83; *Hart*, 347 Mich at 564-565. In *Fultz*, a majority of this Court recognized the often "slippery distinction" between misfeasance and nonfeasance of contractual obligations and attempted to disentangle the misfeasance/nonfeasance dichotomy by shifting the focus to whether the particular defendant owed a duty to the plaintiff. *Fultz*, 470 Mich at 467 (quotation marks and citation omitted). Noting that this Court had described a tort action arising from the misfeasance of contractual obligations as a "'violation of a legal duty separate and distinct from the contractual obligation,'" the *Fultz* majority explained that this "'separate and distinct' definition of misfeasance" offered better guidance in determining whether a negligence action based on a contract and brought by a third party could lie. *Id.*, quoting *Rinaldo's Constr*, 454 Mich at 84. Accordingly, after *Fultz*, courts were to forgo the misfeasance/nonfeasance distinction and, instead, employ a "'separate and distinct' mode of analysis" to determine the threshold question: "whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations." *Fultz*, 470 Mich at 467; see, also, 1 Torts: Michigan Law and Practice (2d ed), § 10.18, p 10-24. Under this analysis, an action would lie in contract if it was based solely on a defendant's failure or refusal to perform a contractual promise. In contrast, an action *could* lie in either contract or in tort if a "defendant negligently performs a contractual duty or breaches a duty arising by implication from the relation of the parties created by

8

the contract . . . ." *Fultz*, 470 Mich at 469.  In the latter category of cases, however, no tort liability would arise "for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made."  *Id*. at 470.

Applying these principles, *Fultz* concluded that the plaintiff, who had slipped on a snow- and ice-covered parking lot, did not have a negligence cause of action against the contractor hired by the premises owner to plow and salt the lot because, in essence, the plaintiff merely claimed that the contractor had breached its contract by failing to perform its contractual duties.  *Id*. at 468.  Thus, because the plaintiff did not claim that she was a third-party beneficiary of the contract between the defendant and the premises owner or claim that the law otherwise imposed a duty on the defendant to complete the contracted-for performance, the plaintiff had failed to plead a duty owed to her that was independent, or "separate and distinct," from the defendant's contractual duty to the premises owner.  *Id*. at 463, 468.  After explaining that the *Fultz* plaintiff alleged no duty owed to her that was independent of the contract, this Court distinguished the facts of *Fultz* from *Osman v Summer Green Lawn Care, Inc*, 209 Mich App 703; 532 NW2d 186 (1995), overruled in part on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999).  The majority explained that *Osman* was factually similar, insofar as the *Osman* plaintiff was injured when she slipped on ice that the *Osman* defendant had contracted to remove from the premises owner's property.  However, the facts of *Fultz* were distinguishable from the facts of *Osman* in a few significant respects: in *Osman*, the defendant *breached* a duty owed to the plaintiff that was separate and distinct from its contractual obligations when it created a "new hazard" in carrying out its snow-removal duties.  Specifically, in acting under the contract, the defendant moved snow to a portion

9

of the premises that created a condition that it should have known would pose a danger to individuals traversing the area. *Fultz*, 470 Mich at 468-469. In contrast to the plaintiff in *Osman*, the *Fultz* plaintiff failed to establish *the existence of a duty* owed to her by the defendant and, thus, could not meet the threshold requirement for bringing a negligence action. The plaintiff simply asserted that the defendant had failed to perform its contractual obligations to the premises owner, which was insufficient to establish that the defendant owed her a duty in tort. *Id*. at 468-469. Accordingly, the plaintiff's remedy in *Fultz* rested solely against the premises owner.

## B. CLARIFICATION OF *FULTZ*

Although *Fultz* clearly stated that a defendant's legal duty to act must arise separately and distinctly from a defendant's contractual obligations, *Fultz*'s "separate and distinct mode of analysis" has been misconstrued to, in essence, establish a form of tort immunity that bars negligence claims raised by a noncontracting third party. This is due, in part, to two orders from this Court, *Mierzejewski*, 477 Mich 1087, and *Banaszak*, 477 Mich 895. Courts have misconstrued *Fultz*'s test requiring a "separate and distinct duty" by erroneously focusing on whether a defendant's conduct was separate and distinct from the obligations required by the contract or whether the hazard was a subject of or contemplated by the contract. See, e.g., *Carrington v Cadillac Asphalt, LLC*, unpublished opinion per curiam of the Court of Appeals, issued February 9, 2010 (Docket No 289075); *Hatcher*, unpub op at 5; see, also, 1 Torts: Michigan Law and Practice, § 10.18, p 10-25. This interpretation is incorrect because, in analyzing tort actions based on a contract and brought by a noncontracting third party, *Fultz* directed courts to focus on "[w]hether a particular defendant owes *any duty at all* to a particular

10

plaintiff," *Fultz*, 470 Mich at 467 (emphasis added), and, thus, generally required an inquiry into whether, aside from the contract, "a defendant is under *any* legal obligation to act for the benefit of the plaintiff," *Valcaniant*, 470 Mich at 86 n 4.[5]  See also *Davis*, 568 F3d at 575-576.

Thus, in determining whether an action in tort will lie, *Fultz* recast the test to focus on whether any legal duty independent of the contract existed.  *Fultz*, 470 Mich at 466. Notably, in requiring courts to focus on whether a defendant owed a legal duty to the plaintiff, *Fultz* directed courts to utilize the "'separate and distinct' definition of misfeasance."  *Id.* at 467.  In shifting the focus to this Court's "separate and distinct definition of misfeasance," however, *Fultz* did not modify the aforementioned historical understandings of this Court's "separate and distinct mode of analysis."  Instead, *Fultz* favorably cited *Rinaldo's Constr*, 454 Mich at 84, and *Ferrett*, 438 Mich at 245, which, like *Fultz*, focused on whether a *legal duty* independent of a contract existed, rather than

---

[5] While this Court's orders in *Banaszak* and *Mierzejewski* may have understandably caused confusion, as explained later in this opinion, *Fultz* did not purport to overrule longstanding common law.  Instead, *Fultz* intended to provide a simplified test to disentangle the sometimes difficult distinction between misfeasance and nonfeasance by directing courts to focus on the "'separate and distinct' definition of misfeasance," as previously recognized by this Court.  *Fultz*, 470 Mich at 467.  Notably, the *Banaszak* and *Mierzejewski* orders only cited *Fultz* and did not claim to extend it.  Moreover, *Fultz* did not claim to overrule the common law, and, just as "legislative amendment of the common law is not lightly presumed," *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 28; 780 NW2d 272 (2010) (quotation marks and citation omitted), this Court does not heedlessly modify the common law.  Accordingly, to the extent that *Banaszak* and *Mierzejewski* have been misconstrued to support an overly expansive reading of *Fultz*, we note that such an interpretation is incorrect and reject it as inconsistent with *Fultz*.

11

whether defendant's conduct was separate and distinct from the tasks required by the contract or whether the hazard was contemplated by the contract. *Davis*, 568 F3d at 576.

Determining whether a duty arises separately and distinctly from the contractual agreement, therefore, generally does not necessarily involve reading the contract, noting the obligations required by it, and determining whether the plaintiff's injury was contemplated by the contract. *Id.* Instead, *Fultz*'s directive is to determine whether a defendant owes a noncontracting, third-party plaintiff a legal duty apart from the defendant's contractual obligations to another. *Fultz*, 470 Mich at 461-462. As this Court has historically recognized, a separate and distinct duty to support a cause of action in tort can arise by statute, *Clark*, 379 Mich at 261, or by a number of preexisting tort principles, including duties imposed because of a special relationship between the parties, see, e.g., *Williams*, 429 Mich at 499, and *Fultz*, 470 Mich at 468 n 4, and the generally recognized common-law duty to use due care in undertakings, see, e.g., *Clark*, 379 Mich at 261; *Hart*, 347 Mich at 564. As this Court has explained:

> Cases recognizing a right to maintain an action in tort arising out of a breach of contract by the defendant, generally involve a separate and distinct duty imposed by law for the benefit of the plaintiff that provides a right to maintain an action without regard to whether there was a contractual relationship . . . . In *Clark* [379 Mich at 261-262], the duty "imposed by law" was "[t]he general duty of a contractor to act so as not to unreasonably endanger the well-being of employees of either subcontractors or inspectors, or anyone else lawfully on the site of the project . . . ." [*Ferrett*, 438 Mich at 245-246 (second alteration in *Ferrett*).]

Stated another way, under the "separate and distinct mode of analysis," "'[e]ntering into a contract with another pursuant to which one party promises to do something does not alter the fact that there [exists] a preexisting obligation or duty to avoid harm when one

12

acts.'" *Rinaldo's Const*, 454 Mich at 84, quoting Prosser & Keeton, Torts (5th ed), § 92, pp 656-657; see, also, *Davis*, 568 F3d at 575, 577.

Thus, under *Fultz*, while the mere existence of a contractual promise does not ordinarily provide a basis for a duty of care to a third party in tort, "the existence of a contract [also] does not extinguish duties of care otherwise existing . . . ." 1 Torts: Michigan Law and Practice, § 10.18, p 10-25; see, also, *Fultz*, 470 Mich at 468-469. *Fultz* did not extinguish the "simple idea that is embedded deep within the American common law of torts . . . : if one 'having assumed to act, does so negligently,' then liability exists as to a third party for 'failure of the defendant to exercise care and skill in the performance itself.'" *Davis*, 568 F3d at 575, quoting *Hart*, 347 Mich at 564.

In summary, "[w]hether a particular defendant owes *any duty at all* to a particular plaintiff [in tort]," *Fultz*, 470 Mich at 467 (emphasis added), is generally determined without regard to the obligations contained within the contract, *Davis*, 568 F3d at 577. See, also, *Churchill v Howe*, 186 Mich 107, 114; 152 NW 989 (1915) (explaining that although a tort can grow out of a contract, in general, a tort is a "wrong independent of a contract"). Accordingly, with the aforementioned principles in mind, we clarify that when engaging in the "separate and distinct mode of analysis" in *Fultz*'s analytical framework, see 470 Mich at 469-470, courts should not permit the contents of the contract to obscure the threshold question of whether any independent legal duty to the noncontracting third party exists, the breach of which could result in tort liability. Instead, in determining whether the action arises in tort, and thus whether a separate and distinct duty independent of the contract exists, the operative question under *Fultz* is

13

whether the defendant owed the plaintiff any legal duty that would support a cause of action in tort, including those duties that are imposed by law.

## C. APPLICATION

Unlike the plaintiff's cause of action in *Fultz*, 470 Mich at 468-469, plaintiff's cause of action in this case was not brought solely on the basis of defendant's failure to perform its contractual obligations to the general contractor. Instead, plaintiff claims that defendant breached the common-law duty to exercise reasonable care and avoid harm when one acts. *Clark*, 379 Mich at 261; *Rinaldo's Constr*, 454 Mich at 84. Defendant's motion for summary disposition, however, was raised and decided on the basis of a misinterpretation of *Fultz*. Specifically, defendant's motion was brought exclusively under the erroneous belief that defendant owed no duty to plaintiff because defendant's performance and the hazards associated with that performance were the subject of defendant's contract with the general contractor. Because defendant's motion was brought solely under the mistaken belief that *Fultz* extinguished preexisting common-law duties, we need not and do not preemptively decide whether *this particular plaintiff* was owed a duty of care under the common law.

## IV. CONCLUSION

Under *Fultz*, a contracting party's assumption of contractual obligations does not extinguish or limit separate, preexisting common-law or statutory tort duties owed to noncontracting third parties in the performance of a contract. Accordingly, we clarify that when engaging in *Fultz*'s "separate and distinct mode of analysis," courts should not permit the contents of the contract to obscure the proper initial inquiry: whether, aside from the contract, the defendant owed any independent legal duty to the plaintiff. In this

14

case, defendant—by performing an act under the contract—was not relieved of its preexisting common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of its undertakings. That duty, which is imposed by law, is separate and distinct from defendant's contractual obligations with the general contractor. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings that are consistent with this opinion.

> Michael F. Cavanagh
> Robert P. Young, Jr.
> Marilyn Kelly
> Stephen J. Markman
> Mary Beth Kelly

HATHAWAY, J. I concur in the result only.

> Diane M. Hathaway

ZAHRA, J., did not participate because he was on the Court of Appeals panel in this case.

15