# STATE OF MICHIGAN

# COURT OF APPEALS

JILL T. TOBIAS and DION TOBIAS,

    Plaintiffs-Appellants,

v

ANGELI MENOMINEE PLAZA, LLC, also
known as ANGELI-MENOMINEE PLAZA, LLC,
and ANGELIS FOOD COMPANY,

    Defendants,

and

BARLEY TRUCKING & EXCAVATING, INC.,

    Defendant-Appellee.

UNPUBLISHED
October 9, 2018

No.  340094
Menominee Circuit Court
LC No.  16-015412-NO

Before:  MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

In this negligence action, plaintiffs appeal as of right the trial court's order granting defendant Barley Trucking & Excavating, Inc. summary disposition under MCR 2.116(C)(10). We affirm.

## I. BACKGROUND

On December 11, 2014, plaintiff Jill Tobias[1] parked her car next to a cart corral in a parking lot owned by Angelis Food Company and Angeli-Menominee Plaza, LLC (collectively,

---

[1] Plaintiff Dion Tobias brought a loss of consortium claim based on his status as plaintiff Jill Tobias's lawful spouse.  Because the two plaintiffs share a last name, we use Jill's first name throughout this opinion.

-1-

"Angelis").[2]  She got out of her vehicle, walked next to the corral, and tripped over a pipe protruding from the corral causing her to strike her right knee on the pavement.  Plaintiffs sued defendant Barley Trucking & Excavating, Inc., a plowing company, alleging that it negligently bent the pipe that Jill tripped over by hitting it with a plow truck.  The record shows that defendant had plowed the Angelis parking lot on December 8, 2014, three days prior to Jill's accident.

During deposition of the crew responsible for plowing the Angelis parking lot, each employee denied having damaged the cart corral or having seen any damage to the cart corral on December 8, 2014.  The employees responded to several questions about how cart corrals were pushed out of the way to plow the lot, testifying that the corrals were generally pushed with the blade raised only high enough to clear the snow cover.  The employees also revealed that defendant has a mandatory damage-reporting procedure that they consistently used and the record indicates that no damage report was filed for the bent pipe.  When provided a photograph of the damaged cart corral, several employees opined that they could not have caused the pipe to bend outward.

Defendant moved for summary disposition.  After two hearings on the matter, the trial court denied the motion.  This ruling was predicated upon plaintiffs' assertions that the bent pipe was roughly the height at which the snowplow blade would be located to push the corral, that defendant had a history of damaging cart corrals, and that defendant's employees had acknowledged that the snowplowing was the only possible explanation for the damage.  Defendant then conducted additional discovery to refute these assertions and renewed its motion for summary disposition.  The trial court granted the renewed motion, concluding that plaintiffs' argument was speculative and not supported by the record evidence.  In doing so, the trial court concluded that the evidence presented was insufficient to support a finding that defendant's plowing was the single likely explanation for the damaged cart corral and that a reasonable jury could not therefore conclude beyond a reasonable doubt that defendant or its employees caused Jill's injuries.

II.  ANALYSIS

"We review de novo a trial court's grant or denial of summary disposition." *Tomra of North America, Inc v Dep't of Treasury*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336871); slip op at 2.  "A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim, and is appropriately granted when, except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." *Id*. at ___; slip op at 2.

---

[2] The Angelis defendants were previously granted summary disposition and are not parties to this appeal.  Accordingly, any reference to "defendant" in this opinion refers to defendant Barley Trucking & Excavating, Inc.

In its renewed motion for summary disposition pursuant to MCR 2.116(C)(10), defendant argued that plaintiffs had failed to demonstrate a genuine issue of material fact regarding whether defendant was the proximate cause of Jill's injury. To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). The concept of causation encompasses both cause in fact and proximate cause. *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994), overruled in part on other grounds in *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999). Nonetheless, a court must determine that a plaintiff has established factual causation before proximate causation becomes a relevant issue. *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017). Cause in fact may be established by circumstantial evidence, but such proof must facilitate reasonable inferences and not mere speculation. *Skinner*, 445 Mich at 163-164. Mere possibilities are insufficient to create an issue of fact. *Id*. at 172-173. The circumstantial evidence must tend to narrow the possibilities to a single likely explanation. *Id*. at 164. Evidence of causation is sufficient if the jury may conclude that, more likely than not, but for the defendant's conduct the plaintiff's injuries would not have occurred; this applies even if other plausible theories have evidentiary support. *Wilson v Alpena Co Rd Comm*, 263 Mich App 141, 150; 687 NW2d 380 (2004).

*Defendant Was Entitled to Summary Disposition*. On appeal, plaintiffs first argue that the trial court incorrectly concluded that there was no genuine issue of material fact regarding causation. Plaintiffs contend that there was overwhelming circumstantial evidence to support a conclusion that defendant's employees damaged the corral. We disagree.

First, plaintiffs suggest that because defendant had damaged a cart corral in the past, defendant presumably damaged the cart corral at issue here. The testimony of defendant's employees, however, revealed that this was not a common occurrence. The record reflects a single incidence of damage to a cart corral caused by an employee of defendant in 2008 or 2009, and there was uncontested testimony that defendant adhered to its mandatory damage-reporting process and promptly repaired the cart corral that morning. The record also reveals that defendant had a consistent practice of following this procedure for damaged cart corrals, drain catches, and canopies, and even upon damage to its own equipment.

Nobody filed a damage report for damage to a cart corral on December 8, 2014 and defendant's employees denied damaging the cart corral or seeing any damage to the cart corral. James Mileski, a maintenance person for Angelis at the time of the accident who had worked for Angelis for more than 30 years, testified that he was not aware of any damage done by defendant's employees to the cart corrals. In his observation, defendant was always careful when plowing. On the single other occasion on which defendant had damaged a canopy, defendant took the necessary steps to report and repair the damage.

The testimony on record does not suggest that defendant had a history of damaging cart corrals or causing and leaving damage unreported. On the contrary, the record indicates that defendant rarely damaged property and, when it did, consistently reported and repaired the damage it caused. Thus, the reasonable inference from the evidence was that, if defendant had damaged the cart corral, defendant would have taken the appropriate damage-reporting steps and fixed the damage, as it had done in the past.

Second, plaintiffs argue that, despite the employees' statements that they did not damage the corral, the location of the damage was consistent with one employee's testimony about where the plow blade would be placed to move the cart corral. Plaintiffs suggested that the damage on the pipe was approximately six to nine inches high from the ground. The employees testified that, when pushing a cart corral, the plow blade would be raised just high enough to clear the snow. This testimony suggests that the blades were slightly above ground level on December 8, 2014, because, according to the evidence presented, there was very little snow on the ground. The testimony therefore does not support plaintiffs' theory that the plow blade would have been raised to a position consistent with the location of the damage on the cart corral. Indeed, none of defendant's employees testified that the blade was at that height.

Third, plaintiffs argue that defendant's plowing operations were the only reasonable explanation for the damage to the cart corral. We disagree. In this case, plaintiffs did not offer any expert testimony that it was more likely than other possible explanations that the damage was caused by defendant or even a plow truck. Plaintiff was injured three days after defendant plowed the Angelis parking lot. The record showed that there was substantial traffic in the parking lot and that people often performed "donuts" there. Indeed, the record indicates that cars have hit the corrals in the past, causing damage. Again, no damage was reported immediately after defendant's employees plowed the parking lot and, Sylvan Chaltry, who salted the Angelis parking lot, indicated that he did not see any damage to the cart corrals while salting the parking lot shortly after defendant plowed the lot. Finally, defendant's employees testified that the damaged pipe appeared to have been caused from the *inside* of the cart corral outward and that a plow could not have caused the damage to the cart corral in such a manner as to bend the pipe outward.

The record evidence does not support any of plaintiffs' theories of causation. Plaintiffs presented no evidence that created a reasonable inference that defendant was the cause of Jill's injury. Therefore, because a reasonable jury could not conclude beyond a reasonable doubt that defendant was a cause-in-fact of Jill's injuries, defendant was entitled to summary dismissal of plaintiffs' negligence claim under MCR 2.116(C)(10).

*Defendant Was Entitled to Renew Its Motion for Summary Disposition.* Plaintiffs also argue that it was inappropriate for the trial court to consider defendant's renewed motion for summary disposition after denying its first motion. We disagree. Successive motions for summary disposition are specifically permitted under MCR 2.116(E)(3), which states that a "party may file more than one motion under this rule," subject to an exception that does not apply in this case. Indeed, when, as here, additional discovery reveals that summary disposition would be appropriate despite the trial court's earlier denial, the prudent course of action is to file a renewed motion for summary disposition for the trial court to consider this additional evidence before trial. See *Brown v Brown*, 478 Mich 545, 550; 739 NW2d 313 (2007). Along these same lines, we also reject plaintiffs' contention that the law-of-the-case doctrine precluded the trial court from considering defendant's renewed motion for summary disposition. The law-of-the-case doctrine "bars reconsideration of an issue by an equal or subordinate court during subsequent proceedings in the same case." *People v Mitchell (On Remand)*, 231 Mich App 335, 340; 586 NW2d 119 (1998). In this case, defendant's motions for summary disposition were brought in the same proceedings, not "subsequent proceedings." The law-of-the-case doctrine is inapplicable.

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle