*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VHS DETROIT RECEIVING HOSPITAL, INC., doing business as DETROIT RECEIVING HOSPITAL and UNIVERSITY HEALTH CENTER, and VHS HARPER-HUTZEL HOSPITAL, INC., doing business as HARPER-HUTZEL HOSPITAL,

Plaintiffs-Appellants,

v

CITY OF DETROIT,

Defendant-Appellee.

UNPUBLISHED
May 21, 2019

No. 341628
Wayne Circuit Court
LC No. 16-011846-NF

Before: REDFORD, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

Plaintiffs, VHS Detroit Receiving Hospital, Inc., doing business as Detroit Receiving Hospital and as University Health Center, and VHS Harper-Hutzel Hospital, Inc., doing business as Harper-Hutzel Hospital, appeal by right the trial court's order granting summary disposition in favor of defendant, the City of Detroit (the city). We affirm.

This case arises from a September 2014 "motor vehicle collision" in which Latrisha Snider was seriously injured while she was a passenger on a bus that was insured by the city. In December 2014, Snider filed a complaint against the city, which is self-insured for purposes of city vehicles. She sought the payment of personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 *et seq.*, with respect to medical treatment that she had received following the accident. Snider subsequently received medical treatment from plaintiffs in the fall of 2015, with plaintiffs allegedly providing her "in excess of $265,000.00 in medical products, services and accommodations for her care, recovery and rehabilitation." On June 8, 2016, Snider and the city entered into a settlement agreement in the amount of $105,000. The settlement agreement did not take into consideration the expenses related to the medical services plaintiffs provided to Snider. In September 2016, Snider moved to approve the settlement agreement with the city and to equitably apportion PIP benefits among the numerous providers. Also in

-1-

September 2016, plaintiffs filed suit against the city seeking the payment of PIP benefits to cover the medical treatment and services they provided to Snider in 2015.[1] In October 2016, plaintiffs moved to consolidate their case against the city with Snider's action against the city, and in November 2016, the trial court entered a stipulated order consolidating the two cases.

On January 4, 2017, Snider executed a first party, no-fault release in consideration for the payment of $105,000 by the city. In the release, Snider agreed to dismiss her action against the city. Snider released the city "from any and all due and owing first-party no-fault benefits . . . through June 8, 2016, which [Snider] has or may have against the City arising out of the events, transactions, and occurrences which are or have been complained of in the civil actions referenced above . . . ."[2] One of the referenced actions was plaintiffs' suit against the city. The release effectively encompassed claims by Snider for PIP benefits related to her medical care and treatment by plaintiffs in 2015.

On January 6, 2017, a hearing was held on Snider's motion to approve the settlement agreement and to equitably apportion PIP benefits. The trial court granted the motion, and Snider's counsel agreed to prepare an order and submit it under the seven-day rule. A proposed order was submitted, and the city filed an objection to the proposed order. A dispute arose regarding the inclusion and the nature of language in the order concerning PIP benefits being sought by plaintiffs for their 2015 medical treatment and services. By order dated March 6, 2017, the trial court formally approved the settlement agreement, set forth the equitable distribution of the $105,000 to the various providers, and stated that the order "in no way affects Plaintiffs['] . . . pending claims for independently submitted claims."

On May 25, 2017, the Michigan Supreme Court issued its opinion in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 196; 895 NW2d 490 (2017), holding "that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act." The *Covenant* Court indicated that a healthcare provider that "furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges." *Id.* at 217. Our Supreme Court also noted that its holding was "not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id*. at 217 n 40.

In June 2017, the city, relying on Snider's release and *Covenant*, filed a motion for summary disposition under MCR 2.116(C)(5), (C)(7), and (C)(8). In response, plaintiffs argued that the release did not encompass, nor was it ever contemplated that it would encompass, benefit claims related to plaintiffs' 2015 healthcare services that were the subject of their civil action. Additionally, plaintiffs attached an assignment executed by Snider in September 2017, in which

---

[1] Shortly before filing the complaint, plaintiffs had filed a limited appearance in order to object to the motion to approve the settlement agreement and to equitably apportion PIP benefits.

[2] The release did not affect Snider's "right to seek reimbursement of reasonable and necessary future first-party no-fault benefits in the form of medical care and attendant care."

she assigned her rights to no-fault benefits to plaintiffs. Furthermore, plaintiffs requested leave to file an amended complaint to additionally allege a claim predicated on the assignment, thereby giving plaintiffs standing to seek PIP benefits.

The trial court entertained oral argument on the city's motion for summary disposition and granted the motion. The court ruled that Snider's release was unambiguous and unequivocally clear, releasing her rights to sue the city for PIP benefits that had accrued up to June 8, 2016, which necessarily included any benefits that she may have been entitled to related to plaintiffs' treatment in the fall of 2015. Therefore, according to the trial court, Snider's assignment to plaintiffs "assigned nothing," considering that she "did not possess any no-fault rights to assign when she executed the purported assignment." The trial court also determined that plaintiffs lacked "standing to attack a release to which they were not a party to in the first place."

On appeal, plaintiffs maintain that the release is ambiguous and that a broad interpretation conflicts with the intent and actions of the parties, both before and after the signing. Plaintiffs further argue that the order approving the settlement agreement constituted indisputable evidence that plaintiffs' claims were not released or settled when Snider signed the release. Additionally, plaintiffs contend that the trial court erred by concluding that Snider's assignment of rights failed to give plaintiffs standing to proceed. Finally, plaintiffs assert that in response to requests for admissions, the city admitted in December 2016 that plaintiffs' claims were not released as part of any prior litigation or settlement and that this admission was made after the settlement agreement was first executed in June 2016. Therefore, according to plaintiffs, the city was bound by its admission under MCR 2.312(D), and the trial court erred in finding to the contrary.[3]

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). "Whether a party has standing is a question of law that this Court reviews de novo." *In re Gerald L Pollack Trust*, 309 Mich App 125, 154; 867 NW2d 884 (2015). "Issues involving the proper interpretation of statutes and contracts are also reviewed de novo." *Henry Ford Health Sys v Everest Nat'l Ins Co*, __ Mich App __, __; __ NW2d __ (2018); slip op at 2.

The actions and legal maneuverings of Snider, the city, and plaintiffs in this case are explainable and understandable when examined in the context of a pre-*Covenant* legal environment. In *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 313 Mich App 50, 54; 880 NW2d 294 (2015), this Court summarized the law that was soon to be overruled by the Supreme Court:

> [I]t is also well settled that a medical provider has independent standing to bring a claim against an insurer for the payment of no-fault benefits. And while a

---

[3] Plaintiffs note that even though the release was not ultimately executed until January 2017, the city did not supplement its responses to the requests for admissions, effectively letting its admission stand even in light of the release.

provider's right to payment from the insurer is created by the right of the insured to benefits, an insured's agreement to release the insurer in exchange for a settlement does not release the insurer with respect to the provider's noticed claims . . . . [Citations omitted.]

There are some inescapable conclusions that we reach upon consideration of the record and the circumstances that existed before *Covenant* was issued by our Supreme Court. First, it is clear to us that when the trial court entered the order approving the settlement agreement in March 2017, the parties expected to fully litigate plaintiffs' claims for no-fault benefits related to medical treatment provided to Snider in 2015. Summary disposition was plainly not a consideration at that time because under existing caselaw, plaintiffs still possessed a statutory cause of action against the city under the no-fault act regardless of Snider's release.

Next, the release plainly and unambiguously released *all of Snider's claims* to PIP benefits with respect to medical expenses incurred through June 8, 2016, necessarily including any claims that Snider may have had for benefits to cover the expenses of the medical care provided by plaintiffs in 2015.[4] There is no other reasonable or viable construction of the release, and plaintiffs' reliance on extrinsic evidence in an effort to establish an ambiguity is unavailing. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 446; 886 NW2d 445 (2015) ("When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent."). Moreover, at the time of the release and the order approving the settlement agreement, it is fair to surmise that plaintiffs were not concerned with Snider's releasing her rights to no-fault benefits. Rather, plaintiffs merely wished to preserve their then statutory right to pursue no-fault benefits from the city. This goal was accomplished with the order approving the settlement agreement when the trial court included language that the order "in no way" affected plaintiffs' "pending claims for *independently submitted claims*." (Emphasis added.) At that point, it is clear that the parties and the trial court were all on the same page—the settlement, release, and order did not preclude plaintiffs from going forward with their complaint for PIP benefits.[5]

---

[4] "A claim may be barred because of a release." *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000). "The scope of a release is governed by the intent of the parties as it is expressed in the release. If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release." *Id.* "A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 40; 892 NW2d 794 (2017). "The fact that the parties dispute the meaning of a release does not, in itself, establish an ambiguity." *Cole*, 241 Mich App at 14.

[5] The pre-*Covenant* environment also explains the issue regarding the requests for admissions. In December 2016, the city admitted that plaintiffs' charges for medical treatment provided to Snider in late 2015 were not released as part of any prior settlement agreement. Because

Then, *Covenant* was issued, and everything changed. A statutory cause of action against the city for PIP benefits was no longer available to plaintiffs. And although *Covenant* plainly held that healthcare providers could still use assignments to litigate and pursue no-fault benefits from insurers, Snider had released her rights to benefits covering 2015 medical expenses. So, as the trial court astutely determined, Snider "assigned nothing" to plaintiffs. Accordingly, the trial court did not err in granting the city's motion for summary disposition, and all of plaintiffs' arguments to the contrary lack merit. The procedural circumstances of this case and the holding in *Covenant* dictate summary dismissal of plaintiffs' action.

We affirm. We award taxable costs to the city as the prevailing party pursuant to MCR 7.219.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly

---

plaintiffs were still entitled under existing law to seek no-fault benefits from the city on their own, Snider's settlement or release was in fact no obstacle to plaintiffs' recovery.