*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANIKQUA ARNOLD,

       Plaintiff-Appellant,

v

CITY OF DETROIT and DETROIT
DEPARTMENT OF TRANSPORTATION,

       Defendants-Appellees.

UNPUBLISHED
September 21, 2023

No. 363833
Wayne Circuit Court
LC No. 20-016486-NF

Before: GADOLA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals as of right an order dismissing her third-party no-fault claim she filed after allegedly sustaining injuries when the bus she was attempting to ride on unexpectedly moved. We affirm.

## I. BACKGROUND FACTS

On November 27, 2018, plaintiff boarded one of defendants' buses in the City of Detroit and attempted to pay the bus fare with a discount card. The bus was stopped and the driver had his foot on the brake pedal at the time. After the bus driver told plaintiff that the discount card was not acceptable, plaintiff began calling the bus station on her mobile telephone. While plaintiff was on the telephone standing in the front of the bus, the bus driver shifted the gears from "drive" to "park," which allegedly caused the bus to "jerk" forward and plaintiff's body to strike a pole, injuring her hand and back.

Subsequently, plaintiff filed first-party and third-party no-fault claims against defendants City of Detroit and Detroit Department of Transportation arising from the injuries she allegedly sustained. Plaintiff did not name the bus driver as a party. Plaintiff subsequently moved to consolidate the cases and the motion was granted. Eventually, plaintiff's first-party case for no-fault benefits was dismissed. In her third-party action, plaintiff claimed that defendants and the bus driver were negligent and that defendants were vicariously liable for the bus driver's negligence.

On June 15, 2022, defendants filed a motion for summary disposition of plaintiff's third-party action under MCR 2.116(C)(7), (C)(8), and (C)(10). In relevant part, defendants argued that plaintiff's action must be dismissed because the motor-vehicle exception to governmental immunity, MCL 691.1405, did not apply under the facts of this case; thus, defendants were entitled to governmental immunity as a matter of law, MCL 691.1407(1). That is, no genuine issue of material fact existed on the issue whether the bus driver's actions were negligent. Merely taking the bus out of gear, i.e., transitioning from "drive" to "park," and the natural or normal motions associated with that action, could not constitute negligent conduct. Defendants attached exhibits to their motion, including transcript excepts of plaintiff's deposition testimony of October 27, 2021 and a copy of the police incident report.

Plaintiff responded to defendants' motion for summary disposition, arguing that defendants were not entitled to governmental immunity because the bus driver operated the bus in a negligent manner. Plaintiff argued that the bus driver began operating the bus in a "herky-jerky manner" while she was standing at the front of the bus—which constituted negligent conduct; therefore, the motor vehicle exception to governmental immunity applied. Plaintiff claimed that the actions of the bus driver were not in response to road conditions or any normal operations; rather, the bus driver took retaliatory actions which caused the bus to behave in a "herky-jerky manner" in response to plaintiff calling his supervisor. Plaintiff further explained that "the bus driver needlessly and carelessly threw the bus into park in such a force and manner that Plaintiff – who was standing – was caused to lose her balance and sustain injury as a result of being jerked around and hitting a pole." Plaintiff attached exhibits to her response, including transcript excepts of plaintiff's deposition testimony of October 27, 2021, and copies of plaintiff's medical records.

Defendants filed a reply to plaintiff's response, arguing that plaintiff admitted that the bus was stopped and the bus driver had his foot on the brake. Plaintiff failed to explain, however, what actions the bus driver allegedly took that caused the stationary bus to "behave in a herky-jerky manner." The bus, like other vehicles, is equipped with a gear box, an accelerator, and a brake. There is no other piece of equipment that "the driver can deploy in order to cause the bus to merely jerk." Thus, if the stationary bus jerked, it naturally occurred when the vehicle was placed into the "park" gear—a reasonable action necessitated by plaintiff's own time-consuming actions. Therefore, defendants argued, plaintiff's case should be dismissed as barred by governmental immunity.

On September 29, 2022, the trial court held oral arguments on defendants' motion for summary disposition and the parties argued consistently with their briefs. The trial court granted defendants' motion, noting that it was undisputed the bus was stopped and the bus driver had his foot on the brake when he put the bus into "park." If the bus jolted or jerked during the shifting of gears, that was simply "part and parcel which goes along with the operation of a bus, or a passenger bus." Nothing out of the ordinary was done by the bus driver that could be characterized as a negligent act. Accordingly, plaintiff's third-party claim was barred by governmental immunity. On September 30, 2022, an order was entered granting defendants' motion for summary disposition and dismissing the case. This appeal followed.

Plaintiff argues that the trial court erred in concluding that the bus driver's actions were not negligent in light of her testimony that the bus driver intentionally jerked the bus, causing her to sustain injuries. We disagree.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). The issue whether governmental immunity applies presents a question of law which is also reviewed de novo. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 433; 824 NW2d 318 (2012). Defendants brought their motion for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). When a party moves for summary disposition on multiple grounds and the trial court did not specify the subrule under which it decided the motion, but considered material outside the pleadings, we will treat the decision as not based on MCR 2.116(C)(8). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

Further, it appears that the trial court granted defendants' motion for summary disposition on the grounds of governmental immunity, which is proper under MCR 2.116(C)(7) when a claim is barred by immunity granted by law. See *Seldon*, 297 Mich App at 432. A motion brought under subrule (C)(7) "does not test the merits of a claim but rather certain defenses" that may negate the need for a trial. *Nash v Duncan Park Comm*, 304 Mich App 599, 630; 848 NW2d 435 (2014) (quotation marks and citation omitted), vacated in part on other grounds 497 Mich 1016 (2015). "In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court considers the affidavits, pleadings, and other documentary evidence presented by the parties and accepts the plaintiff's well-pleaded allegations as true, except those contradicted by documentary evidence." *McLean v Dearborn*, 302 Mich App 68, 72-73; 836 NW2d 916 (2013). The evidence submitted must be considered in the light most favorable to the nonmoving party. *Id*. at 73 (citation omitted). "If the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether a claim is barred by immunity is a question for the court to decide as a matter of law." *Ray v Swager*, 321 Mich App 755, 761 n 1; 909 NW2d 917 (2017), quoting *Poppen v Tovey*, 256 Mich App 351, 354; 664 NW2d 269 (2003).

## III. ANALYSIS

As a general rule, under the governmental tort liability act, MCL 691.1401 *et seq*., a governmental agency is immune from tort liability when it is "engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). There are, however, several narrowly drawn exceptions to such immunity, including the motor-vehicle exception. This exception provides that a governmental agency "shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ." MCL 691.1405. Thus, for the exception to apply, the alleged injury must have resulted from the negligent operation of a motor vehicle. *Robinson v Detroit*, 462 Mich 439, 456; 613 NW2d 307 (2000). Mere involvement of a motor vehicle is not sufficient to abrogate immunity. See *Peterson v Muskegon Co Bd of Rd Comm'rs*, 137 Mich App 210, 214; 358 NW2d 28 (1984). In *Chandler v Muskegon Co*, 467 Mich 315, 321; 652 NW2d 224 (2002), our Supreme Court held that the "operation of a motor vehicle" for purposes of the motor-vehicle exception includes only "activities that are directly associated with the driving of a motor vehicle." And, as provided in MCL 257.401(1), negligence in the operation of a motor vehicle consists of a violation of a statute or of the ordinary care standard required by common law. "Ordinary care means the care that a reasonably careful person would use under the circumstances." *Case v Consumers Power Co*, 463 Mich 1, 7; 615 NW2d 17 (2000).

Here, the parties do not dispute that defendants are governmental agencies, that the bus driver—who is not a named defendant—was an employee, and that defendants owned the bus at issue. The disputed issue is whether the bus driver was negligent in the operation of the bus. To avoid defendants' immunity, plaintiff must create a jury question as to whether the bus driver negligently operated the bus. On appeal, plaintiff argues that the bus driver was negligent because he intentionally caused the bus to jerk, while she was standing, when he became frustrated or angry with her for calling his supervisor.

In support of her claim, plaintiff offers her deposition testimony, which included that she got on the bus and had her DOT bus card out and some money but when she attempted to put her money in the fare box, the bus driver put his hand over the fare box and told her that she could not use that DOT card to get on that bus. Plaintiff testified that the bus driver "was agitated as he was saying that." The bus was stopped, with the driver having his foot on the brake. Plaintiff told the bus driver that she had used the card before and could call the bus station to find out and he again said that she could not use that card on that bus. Plaintiff told the bus driver that she was going to call the bus station and that she did not like how he was talking to her. Then, plaintiff called the bus station. The bus was still stopped and the bus driver had his foot on the brake. Plaintiff was standing when she called the bus station and had her telephone on speaker so that the bus driver could hear the phone ringing. As she was doing that, the bus driver was "mumbling things like I don't care what you're doing, you're not getting on this bus with that card and I told you that."

Plaintiff testified that the bus was still stopped and she had her "back kind of katty (sic) corner" to the bus driver. The bus was stopped until the driver "realized I was on the phone because the bus lady answered the phone at first I goes like this so he has to have put it in - - what do you call it - - park. And the bus go (indicating) it did that." When asked if she was facing the bus driver when she felt the bus move, plaintiff testified: "I was katty (sic) corner because I was on the phone." Plaintiff testified that she was not facing the bus driver when the bus moved but she "felt it and [] heard it." She then was asked if she actually saw the driver shift gears and she testified: "If I'm katty (sic) corners, yes, my rear view can see that." Again, plaintiff was asked if she saw the bus driver shift the gears of the bus and she responded: "Katty (sic) corner. Yes." When asked what gear the bus driver shifted into, plaintiff testified: "If it was sitting there with his foot on the brake and I saw him, I could see his foot from my katty (sic) corner because I'm talking to the lady at the same time. So when I felt the bus jerk I grabbed the pole . . . ." Again, plaintiff was asked what gear did the bus driver shift into since she said that she saw him do that and plaintiff testified: "So in my mind, in my opinion out of my katty (sic) corner I could see that but I'm still at the same time talking to this bus lady." Eventually, plaintiff testified that she did not see the bus driver shift into a gear, but she heard it "and I'm going to say out of my katty (sic) corner I did see it but I can't say completely, like I was looking at him to saw it like this face to face because how I was looking at it . . . and I heard it because it makes a noise." When asked if it was possible that the bus driver shifted the bus gears from "drive" to "park," plaintiff replied in the affirmative.

Plaintiff testified that when she heard a "whoosh" sound, the "bus jerked and I had to grab hold to the pole." When asked if the bus moved forward or backward, plaintiff testified: "I don't know. All I know when he jerked my body went forward, back and I grabbed the pole." She heard the whoosh sound and felt the bus jerk while she was on her phone and on hold with the bus station. She did not fall to the floor. The bus station lady eventually told plaintiff that she had to pay the full fare and plaintiff said, "okay, no problem. I'll do that." Plaintiff testified that between the

-4-

time she got on the bus and the time she got off the bus, at least 30 to 40 minutes had passed. After she was told she had to pay the full fare, plaintiff testified, she went to put the money in the fare box and the bus driver hit her hand at the fare box and told her she was not riding on his bus and that she could get off. When the bus driver hit the fare box, all the money fell to the floor and plaintiff said to the driver, "[O]h, you're in trouble. . . "I'm calling, I'm telling, I'm going to make a report on you." Apparently, the bus driver or someone called the police and plaintiff got off of the bus because she was late for a doctor appointment and she caught the next bus that came to the bus stop. The police stopped the second bus and plaintiff was escorted off the bus so they could talk to her. The police told plaintiff that the bus driver said she had put her hands on him, which plaintiff denied. The police eventually put her on a bus and she proceeded to her doctor appointment.

Considering the evidence in the light most favorable to plaintiff as the nonmoving party, we agree with the trial court that plaintiff failed to establish a genuine issue of material fact as to whether the bus driver operated the bus in a negligent manner. The bus driver's action of shifting the bus out of the "drive" gear and into the "park" gear did not constitute negligent conduct. Any incidental movement of the bus during that shifting process was simply the normal operation of the bus. There is no evidence to the contrary. As plaintiff testified, the bus driver did not take his foot off of the brake at any time before the alleged jerking motion happened. For example, the bus driver did not repeatedly pump the brake in an effort to intentionally jerk or jolt the bus in a sudden and unexpected manner; rather, the bus driver simply placed the bus into "park"—likely so that he could stop applying pressure to the brake with his foot during the 30 to 40-minute telephone call plaintiff made to the bus station. In other words, there is no record evidence of any action taken to cause, or that could have been taken to prevent, whatever movement occurred during the process of shifting the bus out of "drive" and into "park" while the bus driver waited for plaintiff to either stay on or leave the bus. And taking the stationary bus out of "drive" and placing it in "park" was not negligent conduct. As discussed above, for the motor-vehicle exception to governmental immunity to apply, plaintiff's alleged injury must have resulted from the negligent operation of a motor vehicle. See MCL 691.1405; *Robinson*, 462 Mich at 456. In this case, no reasonable juror could conclude that plaintiff's alleged injuries resulted from the negligent operation of the bus; therefore, the trial court properly granted defendants' motion for summary disposition.

Affirmed. Defendants are entitled to costs as the prevailing parties. See MCR 7.219(A).


/s/ Michael F. Gadola
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly