*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF MARTEL ROBERTSON, by
LEOLA ROBERTSON, Personal Representative,

UNPUBLISHED
January 22, 2019

Plaintiff-Appellee,

v

No. 337961
Wayne Circuit Court
LC No. 15-010455-NI

LADARIUS DEANGELO JOHNSON,

Defendant,

and

U-HAUL CO. OF MICHIGAN, also known as
2013 U-HAUL TITLING 1, LLC,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

In this negligence action, defendant, U-Haul Company of Michigan (U-Haul), appeals by leave granted[1] the trial court order denying U-Haul's motion for summary disposition under MCR 2.116(C)(10). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

This action arises out of a motor vehicle accident that caused the death of Martel Robertson. Robertson was the passenger in a vehicle heading southbound on M-39 in Detroit when he was struck from behind by defendant, Ladarius Johnson, who was driving a vehicle

---

[1] *Estate of Robertson v Johnson*, unpublished order of the Court of Appeals, entered June 16, 2017 (Docket No. 337961).

owned by U-Haul. The vehicle driven by Johnson had been rented from U-Haul almost two weeks earlier by Robert Smith at the request of Johnson, who admits that he would have been unable to rent the vehicle himself because he did not have a valid driver's license. Smith then granted Johnson complete control over the vehicle. The initial duration of the rental was only for one day, and Smith testified that he had no further communication with anyone from U-Haul until April 12, 2015. He testified that until that point he was under the impression that the vehicle had already been returned to U-Haul. However, viewing the record in the light most favorable to plaintiff, the record reflects that Johnson extended the rental contract without Smith's knowledge or consent on a number of occasions. Most of the extensions are unsigned and appear to have been made by Johnson over the telephone. However, the second extension, dated April 9, 2015, was signed "Robert Smith" and indicates that $50 in cash was received by U-Haul. Smith denied that the signature appearing on the rental extension was his signature. Johnson testified, however, that his girlfriend or fiancée visited the U-Haul facility to make a cash deposit so that the rental agreement would remain current. Thus, it is reasonable to infer that Johnson's girlfriend or fiancée signed Smith's name on the contract extension. Viewed in the light most favorable to plaintiff, Smith was unaware of the contract extensions and did not give permission for Johnson or Johnson's girlfriend or fiancé to extend the contract.

After Robertson's death, plaintiff brought suit against Johnson and U-Haul. U-Haul moved for summary disposition pursuant to MCR 2.116(C)(10), contending that, under the circumstances, it could only be held liable pursuant to federal and state statutes for negligent entrustment of the vehicle, and plaintiff had failed to allege negligent entrustment. Plaintiff responded that its claim was not based upon negligent entrustment, but rather upon ordinary negligence. The trial court agreed and denied the motion for summary disposition.

## II. SUMMARY DISPOSITION

## A. STANDARD OF REVIEW

U-Haul argues that the trial court erred by denying its motion for summary disposition. "The trial court's ruling on a motion for summary disposition is reviewed de novo on appeal." *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 339; 830 NW2d 428 (2012). This Court also "reviews de novo the interpretation of a statute." *McLean v McElhaney*, 289 Mich App 592, 596; 798 NW2d 29 (2010). Summary disposition under MCR 2.116(C)(10) is appropriate where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A (C)(10) motion considers documentary evidence and "tests the *factual* sufficiency of the complaint." *Dalley v Dykema Gossett*, 287 Mich App 296, 304 n 3; 788 NW2d 679 (2010) (quotation marks and citation omitted). In reviewing the motion, "this Court considers affidavits, pleadings, depositions, admissions, and documentary evidence filed in the action or submitted by the parties, in a light most favorable to the party opposing the motion." *Sanders v Perfecting Church*, 303 Mich App 1, 4; 840 NW2d 401 (2013) (quotation marks and citation omitted). "[R]eview is limited to the evidence that has been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

## B. ANALYSIS

U-Haul first argues that summary disposition should have been granted in its favor because Michigan does not recognize a claim for ordinary negligence in connection with the "rental transaction" where the facts do not support a claim for negligent entrustment. Resolution of this issue involves the interpretation of the owner's liability statute, MCL 257.401. "The primary rule of statutory interpretation is that we are to give effect the intent of the Legislature." *Stanton v City of Battle Creek*, 466 Mich 611, 615; 647 NW2d 508 (2002). " 'To do so, we begin with the language of the statute, ascertaining the intent that may reasonably be inferred from its language.' " *Odom v Wayne Co*, 482 Mich 459, 467; 760 NW2d 217 (2008), quoting *Lash v Traverse City*, 479 Mich 180, 187; 735 NW2d 628 (2007). If the language is unambiguous, the intent of the Legislature is clear and " 'judicial construction is neither necessary nor permitted.' " *Odom*, 482 Mich at 467, quoting *Lash*, 479 Mich at 187.

MCL 257.401 provides in relevant part:

(1) This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family.

\* \* \*

(3) Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is liable for an injury caused by the negligent operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle was being operated by an authorized driver under the lease agreement or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member. Unless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor's liability under this subsection is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

The first sentence of MCL 257.401(3) plainly sets forth the circumstances when a short-term lessor—such as U-Haul—will be liable for injuries caused by the negligent operation of the motor-vehicle that it leased. The second sentence provides that the liability imposed by the first sentence is generally limited to $20,000 or $40,000. Additionally, the second sentence provides

that the limitations on liability do not apply if "the lessor, or his or her agent, was negligent *in the leasing of the motor vehicle.*" MCL 257.401(3) (emphasis added).

U-Haul interprets the phrase "in the leasing of a motor vehicle" as being synonymous with a common-law claim for negligent entrustment. U-Haul also argues that such a claim only looks at the circumstances "at the time of the rental." In support, U-Haul directs our attention to *Perin v Peuler*, 373 Mich 531, 538-539; 130 NW2d 4 (1964), overruled on other grounds *McDougall v Schanz*, 461 Mich 15; 597 NW2d 148 (1999), where our Supreme Court stated that in a negligent entrustment case:

> the burden is upon the plaintiff to establish that the motor vehicle was driven with the permission and authority of the owner; that the entrustee was in fact an incompetent driver; and that the owner knew *at the time of the entrustment* that the entrustee was incompetent or unqualified to operate the vehicle, or had knowledge of such facts and circumstances as would imply knowledge on the part of the owner of such incompetency. [(Emphasis added; quotation marks and citation omitted).]

*Perin*, however, also suggested that a claim for negligent entrustment can be sustained "if that conduct was known to the entrusting owner at the time of *or during* continuation of the entrustment . . . ." *Id.* at 538. Accordingly, even under the common law, a claim for negligent entrustment is not necessarily limited to what the vehicle's owner knew at the time of the entrustment.

More importantly, plaintiff has expressly disavowed reliance on a common-law negligent entrustment theory and instead asserts that liability arises under MCL 257.401(3). The plain language of MCL 257.401(3) provides that a short-term lessor is liable for "an injury caused by the negligent operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle was being operated by an authorized driver," and it provides that there are no monetary limitations on that liability if "the lessor, or his or her agent, was negligent in the leasing of the motor vehicle." MCL 257.401(3). Nothing in the statutory language limits U-Haul's liability in leasing solely to the common-law negligent entrustment theory, which only imposes a duty on the owner if the owner knows or should know that the person being entrusted with a chattel is incompetent. Therefore, we may not read such a limitation into the statute. See *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 218; 801 NW2d 35 (2011) (stating that nothing will be read into a clear statute that is not within the manifest intention of the Legislature as derived from the language of the statute itself). Moreover, MCL 257.401(5) expressly provides that subsection (3) "shall not be construed to expand *or reduce,* except as otherwise provided by this act, th*e liability of a person engaged in the business of leasing motor vehicles* . . . ." If we were to follow U-Haul's interpretation of the statute, it would amount to a reduction of liability for a short-term lessor in contravention of the plain language of the statute. Thus, contrary to U-Haul's claim on appeal, Michigan law permits a plaintiff to bring a claim for *any* negligence in the leasing process regardless of whether or not the elements for negligent entrustment can be satisfied under the circumstances.

Having determined that plaintiff may sustain a claim for negligent leasing under MCL 257.401(3), we must determine whether U-Haul owed any legal duty to plaintiff's decedent,

Robertson. U-Haul contends that under the present circumstances, it owes no duty to the general public in connection with the leasing process. We disagree.

"To establish a prima facie case of negligence, a plaintiff must prove that '(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 683 NW2d 587 (2004), quoting *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). In *Hill*, our Supreme Court explained that "[e]very person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others," but that as a general rule "there is no duty that obligates one person to aid or protect another." *Id*. (quotation marks and citations omitted). "Generally, the duty that arises when a person actively engages in certain conduct may arise from a statute, a contractual relationship, or by operation of the common law . . . ." *Id*. at 660-661. In this case, there is no contractual relationship between U-Haul and Robertson and plaintiff concedes that she is not seeking to impose liability under the common-law theory of negligent entrustment. We therefore must examine whether a duty arises under MCL 257.401.

"[W]hether a plaintiff can use a statute to impose a duty of care on a defendant depends on (1) whether the purpose of the statute was to prevent the type of injury and harm actually suffered and (2) whether the plaintiff was within the class of persons which the statute was designed to protect." *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 16; 596 NW2d 620 (1999) (quotation marks, brackets, and citation omitted). Here, one purpose of MCL 257.401(3) was to "lessen the extraordinary losses to which (short-term) lessors were being subjected when they had no control over the vehicle after it was leased." *DeHart v Joe Lunghamer Chevrolet, Inc*, 239 Mich App 181, 189; 607 NW2d 417 (1999). Yet, another purpose is to set forth the circumstances where a short-term lessor would be liable for negligence, including negligence in the leasing of the motor vehicle. Further, by not limiting damages arising from negligent leasing, the Legislature signaled its recognition that negligence in the leasing process was one area where the general public needed additional protection.[2] Thus, a purpose of the statute is to prevent the loss of life caused by negligent operation of a motor-vehicle leased on a short-term basis, which is the exact type of harm that occurred in this

---

[2] U-Haul appears to contend that so long as it is unaware of any obvious incompetency with the individual signing the rental contract, it has no obligation to ensure that other individuals who U-Haul knows or should know are driving the vehicle are minimally competent to safely operate the vehicle. In effect, U-Haul is arguing that by willfully remaining ignorant of even the most basic requirements—such as whether the person it knows to be driving the vehicle has a valid driver's license—it is wholly immune from tort liability arising from an unlicensed driver's negligence. However, the statute imposes a duty on U-Haul to not engage in negligent leasing. Here, there is a fact question as to whether U-Haul breached that duty by knowingly extending the lease to a stranger to the contract on several occasions without taking any steps to ensure that the vehicle was being operated by someone minimally competent, i.e. someone with a valid driver's license.

case. Furthermore, the statute was designed to protect the general public from the risk of harm caused by the negligent leasing of a motor-vehicle; therefore, plaintiff's decedent is within the class of individuals the statute is designed to protect. As a result, there is a statutory basis for imposing a duty on U-Haul in this case.[3]

Finally, to the extent that U-Haul argues plaintiff cannot establish causation, we decline to consider that issue. The issue of proximate cause was not raised in the application for leave to appeal, and our grant of leave to appeal was limited to the issues raised in the application. See MCR 7.205(E)(4).

Affirmed.

/s/ Michael J. Kelly
/s/ Patrick M. Meter

---

[3] U-Haul and the dissent seek to determine whether a duty also arises under the common law. As explained in *Hill*:

> *At common law*, the determination of whether a legal duty exists is a question of whether the relationship between the actor and the plaintiff gives rise to any legal obligation on the actor's part to act for the benefit of the subsequently injured person. The ultimate inquiry in determining whether a legal duty should be imposed is whether the social benefits of imposing a duty outweigh the social costs of imposing a duty. *Factors relevant to the determination whether a legal duty exists include the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented.* We have recognized, however, that the most important factor to be considered in this analysis is the relationship of the parties and also that there can be no duty imposed when the harm is not foreseeable. In other words, before a duty can be imposed, there must be a relationship between the parties and the harm must have been foreseeable. If either of these two factors is lacking, then it is unnecessary to consider any of the remaining factors. [*Hill*, 492 Mich at 661 (quotation marks, brackets, and citations omitted.]

Because plaintiff is not raising a common-law claim in this case and is instead raising a statutory claim, analyzing whether a duty arises under the common law is unnecessary.