*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EQUILLA HERNANDEZ,

        Plaintiff-Appellant,

v

SCOTT HOXIE,

        Defendant-Appellee,

and

BERT HEYBOER PROPERTIES, LLC,

        Defendant.

UNPUBLISHED
March 14, 2019

No. 342959
Kent Circuit Court
LC No. 17-003109-NO

Before: RIORDAN, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Plaintiff, Equilla Hernandez, appeals by right the trial court's order granting summary disposition in favor of defendant Scott Hoxie in this action in which plaintiff allegedly slipped on some black ice on a stairway to a side entrance of her rental unit.[1]  Plaintiff's underlying theories of liability were ordinary negligence, premises liability, and breach of defendant's statutory duties as a landlord under MCL 554.139.  We affirm.

Plaintiff was a tenant in the downstairs apartment of defendant's two-story house that was comprised of two rental units.  Another tenant lived in the upstairs unit.  Plaintiff's rental unit had both a front and side door for access.  The side-door entrance had a small porch with four steps from the porch's landing down to ground level.  This short stairway had a handrail.

---

[1] Plaintiff originally named two property management companies as defendants before amending the complaint to name Hoxie as the sole defendant.

On February 11, 2015, at approximately 10:00 p.m., plaintiff used her side door to let her dog outside. She hooked her dog to his chain before she let him out and while she was still inside her apartment. Plaintiff then walked out the door and onto the small porch with her dog. Plaintiff testified that she started walking down the porch steps when she slipped on black ice on the third step down from the top. She fell to the ground and allegedly suffered injuries. Plaintiff did not hold the handrail when she descended the stairs and acknowledged that she was watching her dog instead of the stairs. Plaintiff testified that that it was cold throughout that day and that she had salted the stairway approximately nine hours before she fell. Plaintiff did not recall seeing or feeling ice on the stairs before or after the fall. Plaintiff testified that she attributed her fall to black ice that formed from water running off from the roof of the house. She claimed that she had observed water running off the roof and onto the porch and steps since the very first winter she began living in the rental unit. Plaintiff asserted that she had informed defendant's representative of the water-runoff condition.

Plaintiff filed her action under theories of ordinary negligence, premises liability, and violation of MCL 554.139. Subsequently, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10). The trial court granted defendant's motion for summary disposition, ruling that the open and obvious danger doctrine barred plaintiff's premises liability claim in light of the indicia of wintry conditions at the time of the slip and fall. The trial court also ruled, as a matter of law, that the icy stairs were not unreasonably dangerous or effectively unavoidable; therefore, the special-aspects exception to the open and obvious danger doctrine did not apply. Finally, the trial court concluded that defendant did not breach his statutory duties under MCL 554.139, because the stairway remained fit for its intended use, and there were no defects in the stairs or the roof in need of repair.[2] Plaintiff appeals by right.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). We similarly review de novo any issues of statutory construction. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

In *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013), this Court set forth the governing principles in regard to a motion for summary disposition brought under MCR 2.116(C)(10), explaining:

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. A genuine issue of material fact exists when the record,

---

[2] The trial court did not distinguish ordinary negligence from premises liability and simply treated plaintiff's suit as being based on premises liability and a violation of MCL 554.139.

giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). [Citations and quotation marks omitted.]

"Like the trial court's inquiry, when an appellate court reviews a motion for summary disposition, it makes all legitimate inferences in favor of the nonmoving party." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994).

Plaintiff first argues that the trial court erred in granting defendant's motion for summary disposition because plaintiff's action sounded in ordinary negligence and not premises liability; consequently, the trial court should not have applied the open and obvious danger doctrine. We disagree.

"It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). "Michigan law distinguishes between claims arising from ordinary negligence and claims premised on a condition of the land." *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 692; 822 NW2d 254 (2012). "If the plaintiff's injury arose from an allegedly dangerous condition on the land, the action sounds in premises liability rather than ordinary negligence; this is true even when the plaintiff alleges that the premises possessor created the condition giving rise to the plaintiff's injury." *Id.*; see also *Compau v Pioneer Resource Co, LLC*, 498 Mich 928; 871 NW2d 210 (2015). "A plaintiff cannot avoid the open and obvious danger doctrine by claiming ordinary negligence, when the facts only support a premises liability claim[.]" *Jahnke v Allen*, 308 Mich App 472, 476; 865 NW2d 49 (2014).

Plaintiff's injury arose from an allegedly dangerous condition on the land, i.e., an icy stairway. Plaintiff, however, contends that defendant was negligent by not preventing water from running off the roof onto the porch and stairs; therefore, the gravamen of plaintiff's case was ordinary negligence. We conclude that plaintiff's argument does not change the fact that plaintiff's injury arose from an allegedly dangerous condition on the land, even assuming that dripping or cascading water from the roof formed into ice on the stairs. Plaintiff's contention is essentially an argument that defendant created or was to blame for the condition on the land, which does not transform the claim into one of ordinary negligence.

Plaintiff relies primarily on *Kwiatkowski v Coachlight Estates of Blissfield, Inc*, 480 Mich 1062; 743 NW2d 917 (2008), which is a Supreme Court order that reversed a decision by this Court that had granted summary disposition in favor of the defendants. The Supreme Court reversed for the reasons stated in the dissenting opinion issued by JUDGE JANSEN as part of this Court's resolution of the case. *Id.* The underlying facts were set forth in *Kwiatkowski v Coachlight Estates of Blissfield, Inc*, unpublished per curiam opinion of the Court of Appeals, issued July 3, 2007 (Docket No. 272106); unpub op at 1:

This action arises from plaintiff's fall from a porch when defendant Rupp allegedly opened a door into him. Plaintiff resided at a mobile home park owned/operated by defendant Coachlight Estates of Blissfield, Inc. . . ., and managed by defendant Rupp. According to plaintiff, he approached Rupp's mobile home to speak with him and, as he reached the top of the porch stairs, Rupp opened the screen door outward. The door hit plaintiff in the face and chest, causing him to catch his left foot under the door and fall backward, and causing plaintiff to suffer injuries as a result.

The majority held that no duty was owed, but even if a duty were owed, there was no breach of the duty. Unpub op at 2-3. The majority concluded its opinion by also noting that the "plaintiff's claim arguably sounds in premises liability, not general negligence." Unpub op at 3. The dissent disagreed with the majority's analysis regarding duty and breach of duty. Unpub op at 4. On the issue of premises liability versus ordinary negligence, the dissent opined that the "[p]laintiff's claim is based on defendant's alleged negligence in opening the door—not defendant's failure to protect him from dangerous conditions on the land." *Id.* The dissent concluded that the "[p]laintiff's claim sounded in ordinary negligence only." *Id.*

*Kwiatkowski* does not lend support for plaintiff's position in the instant case. First, the focus of *Kwiatkowski* was on duty and breach of duty, not the dichotomy between ordinary negligence and premises liability. Second, and more importantly, the facts in *Kwiatkowski* quite clearly did not entail an injury arising from a dangerous condition on the land. Rather, they concerned an injury directly caused by ordinary negligence, assuming a negligent act. The events in *Kwiatkowski* are simply not analogous to the facts presented here. In sum, the gravamen of plaintiff's action was premises liability, not ordinary negligence.

Plaintiff does not challenge the trial court's ruling dismissing the premises liability claim on the basis of the open and obvious danger doctrine, nor does plaintiff present any "special aspects" argument. Thus, the trial court's decision regarding the open and obvious danger doctrine and special aspects stands, and we need not address the subject further.

Finally, plaintiff argues that the porch steps were part of the premises and that though required under MCL 554.139 to do so, defendant failed to keep the porch steps fit for their intended use. Consequently, plaintiff contends the trial court erred in summarily dismissing his claim under MCL 554.139.

MCL 554.139(1)(a) provides that "[i]n every lease or license of residential premises, the lessor or licensor covenants . . . [t]hat the premises and all common areas are fit for the use intended by the parties." "MCL 554.139 provides a specific protection to lessees and licensees of residential property in *addition* to any protection provided by the common law." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). Therefore, a plaintiff's claim can go forward under MCL 554.139 even if a common-law premises liability claim would be barred by the open and obvious danger doctrine. *Id.*

Plaintiff relies on this Court's decision in *Hadden v McDermitt Apartments, LLC*, 287 Mich App 124; 782 NW2d 800 (2010), in advancing her argument. Although we find it to be a

close call, we conclude that *Hadden* is factually distinguishable. The facts in *Hadden* were as follows:

> Plaintiff testified that she lived on the second floor of defendant's apartment building. In order to access her mailbox on the first floor, plaintiff used the stairway in question, which consisted of approximately 12 open steps located outside the building but covered by a roof. Plaintiff testified that the day before the fall, she left her apartment to check her mail and noted the presence of snow on all the stairs of the stairway. Although she was able to use the stairway without incident, plaintiff called defendant and complained to "Lori" about the presence of snow and ice on the stairway. She was told that "Scott" would take care of it when he had the time.
>
> Plaintiff testified that on the day of the fall, before she had left her apartment, she again called and notified defendant about the presence of snow and ice on the stairway. Plaintiff produced weather data indicating that preceding her fall, temperatures were at or below freezing, and the area experienced episodes of light freezing rain and at one point "ice pellets." At approximately 1:00 p.m. on December 1, 2006, plaintiff left her apartment to check her mail. She noticed "lots of snow" that was "fresh," and that there was "more than a couple of inches" on the second floor as she walked toward the stairway. Plaintiff descended the stairway and checked her mailbox. Plaintiff's testimony was conflicting on the issue whether she noticed snow or ice on the stairway before her fall. On her way back up the stairway, plaintiff used the right side of the stairway so that she could use the handrail. As she reached the second step, plaintiff slipped and fell on ice, fracturing her left hip. She testified that she did not see the ice before her fall because it was black ice and the stairway was too dark. As she fell, however, plaintiff noticed that the gutters overhead were overflowing with water and icicles had formed. Plaintiff testified that there was no salt on the stairway at the time of her fall. [*Id.* at 130-131.]

The *Hadden* panel examined the Supreme Court's decision in *Allison*, 481 Mich 419, observing:

> Our Supreme Court in *Allison* made it clear that an accumulation of snow and ice could implicate a landlord's duty to keep the premises and all common areas fit for the use intended. In *Allison*, at issue was whether "one to two inches of accumulated snow" in an apartment complex parking lot made the parking lot unfit for its intended use. While the majority of justices agreed that the presence of snow and ice could make a parking lot unfit for its intended use, the Supreme Court held that the facts in *Allison* did not establish that tenants were unable to use the parking lot for its intended purpose[.]
>
> * * *
>
> While the *Allison* Court specifically referenced parking lots, the principles set forth apply to all common areas, including stairways. The primary purpose or

-5-

intended use of a stairway is to provide pedestrian access to different levels of a building or structure. As with a parking lot, MCL 554.139(1)(a) does not require perfect maintenance of a stairway. The stairway need not be in an ideal condition, nor in the most accessible condition possible, but, rather, must provide tenants "reasonable access" to different building levels. We must ascertain whether there could be reasonable differences of opinion regarding whether the stairway was fit for its intended use of providing tenants with reasonable access under the circumstances presented at the time of plaintiff's fall. [*Hadden*, 287 Mich App at 128-130 (citations omitted).]

The *Hadden* panel then returned to the facts at hand, compared them to those in *Allison*, and reached a conclusion:

Defendant concedes that for purposes of this appeal, plaintiff's testimony must be accepted as true and the evidence presented must be viewed in the light most favorable to plaintiff. We agree with the trial court that plaintiff has produced enough evidence to create a material question of fact whether the stairway was fit for its intended use at the time of plaintiff's fall. As stated earlier, the primary purpose of a stairway is to provide pedestrians reasonable access to different levels of a building or structure. Reasonable minds could conclude that the presence of black ice on a darkly lit, unsalted stairway—possibly caused or aggravated by overflowing ice water from overhead gutters in the presence of freezing rain—posed a hidden danger that denied tenants reasonable access to different levels of the apartment building and rendered the stairway unfit for its intended use.

This case is factually distinguishable from *Allison* because black ice on a stairway presents more than the "[m]ere inconvenience" posed by "one to two inches of snow" in a parking lot. Furthermore, as the Court stated in *Allison*, the primary use of a parking lot is to park cars. Although the Court recognized that tenants must have reasonable access to their vehicles in a parking lot, i.e., they must be able to walk to the vehicles, tenants do not use a parking lot for its intended use by merely walking in the lot. Walking in a parking lot is secondary to the parking lot's primary use. In contrast, a tenant uses a stairway for its intended use solely by walking up and down it. Thus, the primary purpose of a stairway is for walking. Indeed, the primary purposes and, therefore, intended uses of a parking lot and a stairway are two different things.

Therefore, under all the circumstances presented here, the snow- and ice-covered stairway may not have been fit for its intended use at the time of plaintiff's fall. We agree with the trial court that this issue presents a material question of fact for the jury. [*Hadden*, 287 Mich App at 131-132 (citations omitted).]

In contrast to the facts in *Hadden*, in the instant case a short four-step stairway was involved; there was no evidence of a lighting issue or problem; plaintiff herself had earlier salted the stairs, and the danger was not "hidden" as plaintiff was familiar with it from her past

-6-

experience living in the rental unit. Additionally, plaintiff was not precluded from reasonably accessing her apartment: She had used the same set of stairs to exit her apartment earlier in the day before the fall and then reentered after her fall by using the same stairway. Under these facts we hold that the trial court did not err when it ruled as a matter of law that plaintiff failed to demonstrate that the porch steps were unfit for their intended use.

We affirm. Having fully prevailed on appeal, defendant may tax costs under MCR 7.219.

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Anica Letica