*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAWRENCE S. HOLMAN,

Plaintiff-Appellant,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN, JONATHAN
HEINZMAN AGENCY, INC., and JONATHAN
HEINZMAN,

Defendants-Appellees.

FOR PUBLICATION
August 4, 2022
9:00 a.m.

No. 357473
Oakland Circuit Court
LC No. 2019-178713-NI

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

SHAPIRO, P.J.

In a prior action, this Court held that defendant Farm Bureau General Insurance Company of Michigan was entitled to rescind plaintiff's insurance policy for material misrepresentations made in the application. This Court reasoned that, regardless whether plaintiff or his insurance agent contributed the false information, plaintiff affirmed any misrepresentation by signing the application. Plaintiff then brought the instant action alleging that his insurance agent was negligent in filling out the application. The trial court granted summary disposition to defendants on the basis of collateral estoppel. We reverse and hold that this Court's prior decision granting rescission to the insurer does not preclude a negligence action against the insurance agent.

## I. BACKGROUND

On December 30, 2014, plaintiff purchased a 2007 Mercury Mountaineer from a car dealership. To obtain insurance, plaintiff called Farm Bureau sales agent Jonathan Heinzman. Heinzman testified that he filled out the insurance application on the basis of answers he received from plaintiff over the phone. The completed application answers negatively to the following question: "Has the Applicant or a member of the Applicant's household driven or moved any vehicle owned by the Applicant which has NOT had the required insurance in force for the preceding six months?" A AAA policy number is then listed as plaintiff's current insurance, with an expiration date of January 15, 2015. Heinzman faxed plaintiff a temporary certificate of

-1-

insurance and asked plaintiff to send proof of his prior insurance. That evening, plaintiff faxed Heinzman a AAA certificate of insurance that expired in 2013.

Heinzman reviewed the AAA certificate of insurance on January 5, 2015, and informed plaintiff that he needed to provide proof of current insurance. Plaintiff responded that he only had the 2013 certificate. Plaintiff's application was sent to Farm Bureau without proof of prior insurance. On January 30, 2015, Farm Bureau sent plaintiff a letter explaining that his application could not be accepted because it was incomplete. Plaintiff asserts that he did not receive this notice before the motor vehicle crash on February 5, 2015, in which he suffered extensive injuries. He remained hospitalized in a medically induced coma for several weeks following the crash.

Plaintiff brought suit against Farm Bureau to recover PIP benefits arising from the accident, and the trial court granted summary disposition to Farm Bureau. In *Holman v Mossa-Basha (Holman I)*, unpublished per curiam opinion of the Court of Appeals, issued November 29, 2018 (Docket Nos. 338210, 338232), a panel of this Court affirmed the trial court's ruling that a notice of cancellation was not required for the temporary certificate of insurance because it expired by its own terms on January 29, 2015, and therefore plaintiff did not have coverage on the date of the crash. *Id*. at 4-6, 9. This panel also held, however, that Farm Bureau was entitled to rescind the policy for misrepresentations made in the insurance application. Farm Bureau identified two misrepresentations made by plaintiff in the application: "(1) that he did not operate an uninsured motor vehicle owned by him in the six-month period preceding his insurance application; and (2) that he held current automobile insurance at the time of his application." *Id*. at 7. The record evidence demonstrated that these representations were false and material. *Id*. Plaintiff argued that Heinzman was responsible for the AAA policy number that was presented in the application as plaintiff's existing insurance, which the panel addressed as follows:

> Much of plaintiff's counter-argument on appeal regarding this issue focuses on his assertion that Heinzman provided a "bogus" AAA policy number in the application. This distinction, however, is meaningless because "[a] contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." *Montgomery v Fidelity & Guaranty Life Ins Co*, 269 Mich App 126, 130; 713 NW2d 801 (2005). Plaintiff signed the application after having had the opportunity to read and review it. Specifically, at his deposition, plaintiff stated that his signature appeared on the application, and when asked whether he read the form before signing it, he responded, "I skimmed over it, yes." Therefore, because plaintiff signed the application after he "skimmed over it," he affirmed any representations or misrepresentations in the document. *Id*. at 129-130.

> Because plaintiff misrepresented that he did not operate an uninsured motor vehicle owned by him in the six-month period preceding his insurance application and that he held current auto insurance at the time of his application, Farm Bureau was entitled to rescind ab initio any coverage plaintiff might have had under the certificate of insurance. Therefore, notwithstanding that plaintiff was not insured on February 5, 2015, because the policy expired on its own terms on January 29, 2015, defendants were entitled to summary disposition on the alternative grounds of misrepresentation. [*Holman I*, unpub op at 7-8.]

Plaintiff then brought the instant action alleging negligence against Heinzman[1] and vicarious liability against Farm Bureau. Both plaintiff and Heinzman were deposed in the prior action and testified to matters that did not appear in this Court's opinion in *Holman I* because they were not relevant to that appeal. In short, plaintiff and Heinzman have competing versions of events as to who contributed the false information to the insurance application.

Heinzman testified that plaintiff first contacted him in September 2014 for purposes of obtaining insurance for the vehicle he had at that time. Heinzman testified that during this conversation plaintiff provided him what was later deemed to be a "fake" AAA policy number as his existing insurance, which Heinzman later included in the Farm Bureau application. Plaintiff did not recall this conversation or contacting Heinzman in September 2014, but he denied giving him the invalid AAA policy number and did not know where it came from. As to the eligibility questions, Heinzman testified that he asked plaintiff each question and accurately recorded his response. Plaintiff testified that Heinzman paraphrased the eligibility questions and that he did not ask whether he or a household member had driven an uninsured vehicle owned by plaintiff in the last six months.

The parties also dispute what occurred after Heinzman learned that plaintiff did not have current insurance. Heinzman testified that he knew that Farm Bureau would cancel plaintiff's policy. According to his notes of his communications with plaintiff, however, Heinzman told plaintiff on January 6, 2015, that Farm Bureau would "probably" cancel the policy. Similarly, after receiving an e-mail from Farm Bureau regarding the missing proof of prior insurance, Heinzman called plaintiff on January 7, 2015, and told him that Farm Bureau "may terminate coverage." Heinzman also testified that he offered to look for coverage for plaintiff through a different insurance company. In contrast, plaintiff denied that Heinzman told him that Farm Bureau would not be insuring him or that he needed to look for other coverage. Plaintiff testified that when he spoke to Heinzman on February 1 or 2, 2015, Heinzman said that the Farm Bureau application was "taking too long in underwriting" and offered to look for coverage elsewhere as a "backup plan" in case the application was not approved. Heinzman found a quote for plaintiff through AAA, but plaintiff turned it down on February 3, 2015, because it was too expensive.

Heinzman moved for summary disposition of the instant suit, arguing that plaintiff's claims were barred by the doctrines of res judicata and collateral estoppel. Heinzman contended that *Holman I* clearly placed the burden on plaintiff to ensure that information contained in the application was accurate, even if it was Heinzman who filled it out. Farm Bureau filed a concurrence with Heinzman's motion. In response, plaintiff argued that neither res judicata nor collateral estoppel applied when *Holman I* did not decide whether Heinzman contributed to any misrepresentation. Plaintiff argued that his failure to ensure that the application was accurate was relevant to his comparative negligence but did not bar his action.

The trial court issued an opinion and order granting Heinzman's motion for summary disposition. The court determined on the basis of collateral estoppel that *Holman I* was dispositive of the causation element of plaintiff's negligence action. The court reasoned that this Court

---

[1] Jonathan Heinzman Agency, Inc., is also named as a defendant. For simplicity, we will refer to Heinzman and his agency collectively as "Heinzman."

actually and necessarily determined that plaintiff made the misrepresentations in the application for insurance. This appeal followed.

## II. ANALYSIS

Plaintiff argues that the trial court erred by concluding that his negligence action against Heinzman was barred by the doctrine of collateral estoppel.[2]

"The doctrine of collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in that prior proceeding." *King v Munro*, 329 Mich App 594, 599; 944 NW2d 198 (2019) (quotation marks and citation omitted). "Generally, for collateral estoppel to apply three elements must be satisfied: (1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *William Beaumont Hosp v Wass*, 315 Mich App 392, 398; 889 NW2d 745 (2016) (quotation marks and citation omitted).

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). The trial court concluded that *Holman I* held that plaintiff made the misrepresentations in the application and that, as a result, plaintiff could not establish that any negligent conduct by Heinzman caused plaintiff's damages. Plaintiff argues that *Holman I* did not decide whether plaintiff or Heinzman made the misrepresentations, only that plaintiff ratified any misrepresentations by signing the application. We agree with plaintiff.

As noted, the *Holman I* panel determined that it was "meaningless" whether Heinzman provided the "bogus" AAA policy number in the application because plaintiff, as the contracting party, had a duty to read the contract and know what he signed. *Holman I*, unpub op at 7. In other words, the panel did not need to decide whether any misrepresentation was attributable to plaintiff or Heinzman for purposes of determining whether Farm Bureau was entitled to rescission because

---

[2] We review de novo a trial court's decision on a motion for summary disposition. *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 723 n 3; 957 NW2d 858 (2020). The applicability of legal doctrines, such as res judicata and collateral estoppel, is also reviewed de novo. See *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). The trial court granted summary disposition under MCR 2.116(C)(10), which is proper if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "The court must consider the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion." *Liparoto Const, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

plaintiff affirmed the contents of the application as the signing party. Farm Bureau points out that *Holman I* then summarizes the matters that "plaintiff misrepresented," *id*. at 8, and argues that this shows the panel necessarily decided plaintiff made the misrepresentations. This statement must be read in context, however. The panel had just explained that it was irrelevant who made the misrepresentations because the contents of the application were ratified by plaintiff. The subsequent statement indicating that plaintiff made the misrepresentations merely reflects that ruling. For these reasons, *Holman I* did not actually and necessarily decide whether plaintiff or Heinzman made the misrepresentations.

Defendants alternatively argue that even if this Court did not actually decide who made the misrepresentations, the conclusion that plaintiff ratified any misrepresentation is nonetheless dispositive of the causation element because it is plaintiff, rather than the insurance agent, who is responsible for the contents of the application. What this reasoning overlooks, however, is that *Holman I* and the case it relied on, *Montgomery*, 269 Mich App 126, concerned the remedy of rescission in a contract case, while this is a tort action.

"An insurance policy is much the same as any other contract," and the application is considered part of the contract. *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 8; 792 NW2d 372 (2010) (quotation marks and citation omitted). The pertinent issue in *Montgomery* was whether the insurer could rescind a life insurance policy for misrepresentations in the application when the insured claimed that the insurance agent had completed the application and neither the insured nor the decedent reviewed it. *Montgomery*, 269 Mich App at 129. This Court found in favor of the insurer, relying on the principles of contract law that "failure to read an agreement is not a valid defense to enforcement of a contract" and "[a] contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." *Id*. at 130. Stated differently, under contract law, a signing party is bound by the contract's terms, regardless of whether they have read them. Accordingly, it is immaterial who contributed false information to an insurance application for purposes of determining whether an insurer may rescind a policy. But the contract principles relied on in *Holman I* and *Montgomery* have no application in a negligence action concerning whether the insurance agent breached a duty to the insured. See *Phillips v Butterball Farms Co, Inc*, 448 Mich 239, 251; 531 NW2d 144 (1995) (recognizing that tort actions are not limited by contract principles).

Indeed, this Court's decision in *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16; 761 NW2d 151 (2008), shows that an insured's duty to read insurance policy documents does not preclude a negligence action against the insurance agent. In that case, the plaintiff alleged negligence against the insurance agent on the basis that the agent failed to obtain the requested coverage or accurately represent the coverage obtained in the renewal policy. *Id*. at 20-21. The jury found in favor of the plaintiff, and on appeal this Court held that the trial court erred by failing to instruct the jury on comparative negligence regarding the plaintiff's failure to read the insurance policy and related documents:

> Because plaintiff's negligence claims in the instant case are tort-based, we conclude
> that the plain language of MCL 600.6304 and MCL 600.2957[, i.e., the comparative
> fault statutes,] required the trial court to give defendants' requested instruction
> regarding comparative negligence. We additionally conclude that plaintiff's

admitted failure to read the policy could qualify as comparative negligence and that the trial court should have permitted the jury to consider whether plaintiff unreasonably failed to read [the insurance policy and related documents]. [*Id.* at 33.]

Significantly, although *Zaremba* acknowledged an insured's duty to read the policy, this Court did not hold that the insured's failure to do so was dispositive of the tort claim against the agent (as it would be in a dispute with the insurer governed by contract law). Rather, we held that the insured's failure to read the insurance application and related documents was relevant to comparative negligence, and that the jury could reasonably determine that it was the proximate cause of the insured's damages. See *id.* at 34-35. Applied here, an insured's failure to identify a misrepresentation in the application allegedly made by the insurance agent should not preclude a negligence action, but it may be considered by a jury when determining comparative fault and proximate cause.

Defendants correctly observe that *Zaremba* concerned an agent's duty to advise on the adequacy of coverage. Generally, "insurance agents have no duty to advise the insured regarding the adequacy of insurance coverage." *Harts v Farmers Ins Exch*, 461 Mich 1, 7; 597 NW2d 47 (1999). "[A]n agent's job is to merely present the product of his principal and take such orders as can be secured from those who want to purchase the coverage offered." *Id.* at 8. But a "special relationship" can be created that gives rise to a duty to advise in certain circumstances. See *id.* at 10-11.

While *Zaremba* concerned an insurance agent's duty to advise on the adequacy of coverage, this case primarily concerns the scope of an agent's duty in preparing the application, which Michigan caselaw has not expressly addressed. However, given that captive insurance agents are "order takers,"[3] *Harts*, 461 Mich at 9, it follows that there is a duty to do so accurately and not contribute false information to the application, whether purposefully or mistakenly. Thus, it is not necessary for us to determine whether there was a special relationship between plaintiff and Heinzman because this case falls within the more general, limited duty to take orders described in *Harts*.[4] *Harts*, 461 Mich at 8. And under *Zaremba*, plaintiff's corresponding duty to review

---

[3] Heinzman was a captive agent for Farm Bureau.

[4] Plaintiff's complaint also implies that Heinzman breached a duty by failing to explicitly tell plaintiff that his insurance policy would be cancelled and that he needed to obtain other coverage. We are not aware of any caselaw addressing whether an insurance agent has a duty to advise the insured about a forthcoming cancellation or rejection of an application. Even if no such duty exists, however, "[w]hen a person voluntarily assumes a duty not otherwise imposed by law, that person is required to perform it carefully, not omitting to do what an ordinarily prudent person would do in accomplishing the task." *Zine v Chrysler Corp*, 236 Mich App 261, 277; 600 NW2d 384 (1999) (quotation marks and citation omitted). And there is a question of fact regarding the efforts Heinzman made to communicate the pending or potential cancellation of plaintiff's policy.

the entire application may be considered in determining comparative fault, but it does not bar a negligence action against Heinzman.[5]

Reversed and remanded for further proceedings. We do not retain jurisdiction. Plaintiff may tax costs as the prevailing party. See MCR 7.219(A).

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett

---

[5] Farm Bureau alternatively contends that there is no material question of fact that the misinformation in the application came from plaintiff. Farm Bureau primarily argues that because plaintiff does not recall (but also does not dispute) that he sought insurance from Heinzman in September 2014, he is not in a position to dispute Heinzman's recitation of that discussion, including that plaintiff provided the "bogus" AAA policy number at that time. However, the mere fact that one witness recalls a discussion, and the other does not, does not mean that the recalling witness's recitation of that discussion must be accepted as true. Moreover, plaintiff testified that he did not provide Heinzman with the invalid AAA policy number. He also testified that Heinzman did not ask whether he or a household member had driven an uninsured vehicle owned by plaintiff in the past 6 months. Heinzman testified otherwise, maintaining that the invalid policy number came from plaintiff and that he asked plaintiff all of the eligibility questions. But when reviewing motions for summary disposition under MCR 2.116(C)(10), courts "may not weigh evidence, make determinations of credibility, or otherwise decide questions of fact." *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 346; 941 NW2d 685 (2019). Viewing the evidence in a light most favorable to plaintiff, there is a material question of fact precluding summary disposition.