*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RORY SPENCE,

        Plaintiff-Appellant,

v

LOUIS SALAK,

        Defendant-Appellee.

UNPUBLISHED
June 27, 2024

No. 367513
Oakland Circuit Court
LC No. 2022-196862-NI

Before: GARRETT, P.J., and SERVITTO and REDFORD, JJ.

GARRETT, P.J. (*concurring in part and dissenting in part*).

I concur in the majority's conclusion that plaintiff, Rory Spence, created a genuine issue of material fact that he suffered an objectively manifested impairment of an important body function affecting his general ability to live his normal life. I also agree that the trial court improperly intermingled the issue of causation with the threshold impairment issue. I part ways from the majority because I would hold that Spence established a triable fact question on the issue of causation as well. Accordingly, I would vacate the order granting summary disposition in favor of defendant, Louis Salak, and remand for continued proceedings.

## I. LEGAL PRINCIPLES

As noted by the majority, "[c]ausation is an issue that is typically reserved for the trier of fact unless there is no dispute of material fact." *Patrick v Turkelson*, 322 Mich App 595, 616; 913 NW2d 369 (2019). "[I]n every negligence case, two causation concepts work in tandem." *Estate of Taylor v Univ Physician Group*, 329 Mich App 268, 278; 941 NW2d 672 (2019). "First, a plaintiff must demonstrate that 'but for' the defendant's negligence, the plaintiff's injury would not have occurred"; i.e., cause in fact. *Id.*, citing *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). At this stage, the plaintiff "produces the factual support establishing a logical sequence of cause and effect." *Estate of Taylor*, 329 Mich App at 278. The plaintiff must then establish legal, or proximate, causation. " 'Proximate causation is a required element of a negligence claim.' " *Patrick*, 322 Mich App at 616, quoting *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). Proximate causation means the negligent act "created a foreseeable risk of the injury the plaintiff suffered." *Estate of Taylor*, 329

Mich App at 278. " 'While a plaintiff need not prove that an act or omission was the sole catalyst for his injuries, he must introduce evidence permitting the jury to conclude that the act or omission was a cause.' " *Id*., quoting *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004).

Causation can be established "through either direct evidence or indirect and circumstantial evidence." *Shaw v Ecorse*, 283 Mich App 1, 14; 770 NW2d 31 (2009). "Direct evidence is that which can defeat a request for summary judgment if 'taken as true,' whereas circumstantial evidence can defeat a summary judgment motion only if inferences are drawn in the nonmovant's favor." *Toscano v PGA*, 258 F3d 978, 983 (CA 9, 2001).[1] Direct evidence is defined by *Black's Law Dictionary* (11th ed) as "evidence based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Direct evidence includes the testimony of the parties based on their personal observations. See *Lewis v LeGrow*, 258 Mich App 175, 208; 670 NW2d 675 (2003) ("[T]he jury was presented with abundant direct evidence, including the testimony of each plaintiff and the testimony of defendant."); *People v Burke*, 38 Mich App 617, 622; 196 NW2d 830 (1972) ("The most probative evidence was the testimony of his personal experiences during the crime. This testimony was direct evidence, and not circumstantial evidence.").[2] "To establish causation using circumstantial evidence," on the other hand, "the 'circumstantial proof must facilitate reasonable inferences of causation, not mere speculation.' " *Shaw*, 283 Mich App at 14-15, quoting *Skinner*, 445 Mich at 164.

Direct evidence would include a positive diagnosis by a doctor in a medical report that a particular injury was caused by an automobile accident. This seems strange, however, because to reach that opinion, the doctor must draw inferences and must speculate to some extent. After all, the doctor did not observe the accident personally or see the particular injury at the time of its onset. Therefore, the doctor would make inferences from the evidence available to state in the medical report that the patient's injuries were caused by the accident. The direct evidence presented by the doctor thereby would be based on circumstantial evidence.

## II. ANALYSIS

Spence was 24 years old when he was rear-ended by Spalak in congested traffic, causing him to collide with the vehicle in front of him. The airbags deployed and his vehicle was rendered undriveable. But Spence did not feel the effects of the collision on his body until the following day. Accordingly, Spence did not take an ambulance to the emergency room immediately, waiting until the next day to seek treatment. In the nine months after the accident, Spence participated in extensive physical therapy, visited the chiropractor frequently, and sought assistance from a pain

---

[1] "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

[2] Published decisions of the Court of Appeals issued on or after November 1, 1990, are precedentially binding. MCR 7.215(J)(1). Although this Court is "not strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990, . . . they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

clinic, in addition to treating with physicians. The difference in Spence's life before and after the accident was remarkable. Spence was transformed from a young man who frequently exercised and lifted weights, worked at his desk job without issue, and needed no assistance, to someone requiring nine months of treatment. This was the evidence supporting that Spence's injuries were caused by the accident.

On November 28, 2021, Spence went to an urgent care clinic, "present[ing] for pain that began this morning after [motor vehicle accident] 1 day ago." The document indicated Spence reported "with [motor vehicle accident] with neck pain," and that the "[m]echanism of injury includes motor vehicle accident." Spence described to the doctor that he was rear ended by a driver traveling 30 to 40 miles per hour, causing him to collide into the vehicle in front of him, that the airbags deployed, and the car was totaled. Spence "report[ed] that his pain is located paracervical region and radiates to his 3rd-4th fingertips." He further reported pain in his right paralumbar region, hip, and ankle.

On December 16, 2021, Spence presented at the chiropractor with tightness in his neck and back. The chiropractor acknowledged Spence's description of the motor vehicle accident and diagnosed Spence with "whiplash." "Whiplash is a neck injury due to forceful, rapid back-and-forth movement of the neck," and "is commonly caused by rear-end car crashes." *Whiplash*, Mayo Clinic, available at <https://www.mayoclinic.org/diseases-conditions/whiplash/symptoms-causes/syc-20378921#:~:text=Whiplash%20is%20a%20neck%20injury,traumas%2C%20such%20as%20a%20fall.> (accessed June 11, 2024).

Spence's initial evaluation note from Team Rehabilitation Physical Therapy, dated January 12, 2022, indicates that before the accident, Spence had no physical limitations due to pain, and ran and lifted weights. After the accident, however, Spence had difficulty sleeping and sitting to work, had to reduce his exercise regimen, and experienced a weakened grip in his right hand. Spence participated in physical therapy three times each week for six months.

On May 11, 2022, Spence visited Bingham Physical Medicine, a specialized pain clinic. Spence complained of "[c]hronic cervicalgia, thoracic and low back pain, right ankle pain, and bilateral hip discomfort status post motor vehicle accident." Spence reported that the airbags were deployed during the accident and that his vehicle was totaled. "He had immediate discomfort in his neck radiating all the way down to his back. He continues to have that discomfort." As noted by the majority, the provider was "puzzl[ed]" that physical therapy had not resolved Spence's pain issues. The fact that physical therapy was less effective than expected does not break the chain of causation. The motor vehicle accident remained the only suggested source of Spence's injuries and pain.

In my opinion, it is not fatal that no doctor specifically stated that Spence's injuries were caused by the motor vehicle accident. The medical reports summarized Spence's description of the accident and outlined his physical complaints in the aftermath. The reports document that Spence had no real concerns prior to the accident. Certainly, Spence could have deposed his providers or secured affidavits. He could have hired an accident reconstructionist to explain how his particular injuries were caused by the movement of the vehicle during the collision. However, a reasonable fact-finder could infer from Spence's young age, the nature of his injuries, and the fact that his symptoms appeared only after the accident, that the accident caused those injuries.

This would not be speculation, but rather logical inferences made after reviewing the available evidence.

Accordingly, I would vacate the trial court's order summarily dismissing Spence's third-party negligence action against Salak and remand for continued proceedings.


/s/ Kristina Robinson Garrett